IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| ELIZABETH NIBLOCK, Individually and on behalf of all those similarly situated<br><br>Plaintiffs,<br>v.<br><br>UNIVERSITY OF KENTUCKY, BOARD OF TRUSTEES, MITCH BARNHART and ELI CAPILOUTO<br><br>Defendant. | CIVIL ACTION NO. 5:19-CV-00394-KKC<br><br><br>**AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Come Now, the Plaintiffs, Elizabeth Niblock and all those similarly situated, by and through their attorneys, Newkirk Zwagerman, P.L.C., and Bonar, Bucher & Rankin, PSC and submit their Amended Class Action Complaint and Jury Demand.

## **INTRODUCTION**

This is an action based on long-standing and ongoing violations of Title IX of the Education Amendments of 1972 by the University of Kentucky ("UK"), and by its Director of Athletics, President, and Board of Trustees. Based on statistical data UK has presented to the U. S. Department of Education, UK needs to add approximately 183 women to its athletic programs to be in compliance with Title IX.

Several female student athletes have attempted to have conversations with athletic administrative staff, the Athletics Director, the President and members of the Board of Trustees about adding more female varsity sports. Yet, Defendants have maintained that they will not add any female sports to help bridge the participation gap between male and female student athletes. Because they are not offering enough women's opportunities, they are also

denying female student athletes the same scholarship opportunities. UK prides itself on being a leader in the nation in sports with its Elite 1-3-5 program. However, UK, is standing on the backs of its female student population in order to promote and benefit men's sports at the expense and detriment to women's sports.

Equity in athletic participation opportunities requires participation opportunities to be proportionate to enrollment numbers based on gender. Title IX does not require an equal number of male and female student athletes or male and female varsity sports, but rather parity with the overall student enrollment.

Because Defendants persist in this misconduct, this action is brought by prospective players in their individual capacities as well as on behalf of all similarly situated female student athletes now and in the future, to redress the undisputed historic and ongoing discriminatory conduct perpetrated by Defendant UK.

## STATEMENT OF THE CASE

1. Defendant University of Kentucky discriminates against women on the basis of sex by, among other things, providing substantially fewer and poorer opportunities for women in sports than for male students.

2. Plaintiffs seek to stop Defendants from discriminating against them and all others similarly situated now and in the future.

3. Defendants make decisions in UK's athletic program based upon sex of the student athletes resulting in disparate treatment of female students.

4. Defendants' intentional decisions to offer significantly fewer opportunities for female athletes, provide unequal access to facilities and monies for women's sports, and to operate

out of compliance with Title IX since its inception are based upon gender and therefore constitute intentional sex discrimination.

5.      Plaintiff Elizabeth Niblock brings this action on behalf of herself and similarly situated female students ("Plaintiffs") at UK against the University, its Board of Trustees, Athletic Director Mitch Barnhart and President Eli Capilouto.

6.      Plaintiffs allege that Defendants have engaged in systemic discrimination on the basis of gender at UK by failing to provide equitable varsity athletic opportunities for women and by failing to expand its female varsity athletic opportunities in line with the interest and abilities of Plaintiffs and the prospective class. Plaintiffs further allege that, by engaging in such conduct, Defendant is in violation of: (1) the Equal Athletic Participation Opportunity requirements of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq*.) ("Title IX"); and (2) the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983.

7.      Under Title IX, Defendants are prohibited from engaging in discrimination and from denying participation in or the benefits of any educational program on the basis of gender. 20 U.S.C. § 1681. Further, to comply with Title IX, the intercollegiate athletics program at UK must be structured so that: (1) the participation rate of women is "substantially proportionate" to their undergraduate enrollment rate; or (2) the program demonstrates a "history and continuing practice of program expansion which is demonstrably responsive to the developing interests and abilities" of women; or (3) the present program "fully and effectively" accommodates women's interests and abilities. *See* 44 Fed. Reg. 71,413, 71,418 (1979).

8.      UK's intercollegiate varsity athletic program fails to meet any of these standards.

9.      Defendants continue to violate the civil rights of Plaintiffs and members of the proposed class they seek to represent in this action by failing to provide equitable athletic

participation and scholarship opportunities for women, despite the athletic interests and abilities of UK female students and prospective students. In addition, Defendants have used and continue to employ a discriminatory process for establishing and maintaining varsity teams for men and women at UK, with the result that women are deprived of an equitable opportunity to participate in varsity level sports.

10.    Plaintiffs seek declaratory, injunctive, and monetary relief and the other judicial remedies available to them to ensure Defendants' compliance with Title IX, including: (1) a declaration that Defendants have violated and continue to violate the above-referenced anti-discrimination laws; (2) an injunction: (a) restraining Defendants from engaging in sex discrimination in the administration of the UK athletic programs; (b) requiring Defendants to increase varsity athletic participation opportunities for female students at UK and to provide all corresponding benefits of varsity status; and (c) requiring Defendants to increase athletic financial assistance for female athletes; and (3) monetary damages as permitted by law and proven at trial.

## JURISDICTION AND VENUE

11.    This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.,* and the regulations and policies promulgated pursuant to that law, as well as under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983.

12.    This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331, 1343(3), and 1343(4).

13.    This Court has jurisdiction to provide declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202.

14.     Venue is proper in the United States District Court for the Eastern District of Kentucky pursuant to 28 U.S.C. § 1391(b) because the events from which Plaintiffs' claims arise occurred in Lexington, Kentucky, which is within the jurisdiction of this Court.

## THE PARTIES

15.     The individual Plaintiffs are women and current students at UK. All are highly skilled athletes who have participated in Division I athletics at other institutions or participate in club sports at UK and who desire to participate in sports at the varsity level. All of the Plaintiffs are eligible to participate in intercollegiate athletics under the applicable rules.

### *Plaintiff Elizabeth Niblock*

16.     Plaintiff Elizabeth Niblock enrolled at UK in 2017 after transferring from another Division I institution where she had been recruited for and played lacrosse.

17.     She is clearly skilled and talented in lacrosse and has already competed at a high level being recruited and signed by a Division I institution.

18.     Plaintiff Niblock transferred to UK because it was closer to home and she wanted the bigger school atmosphere.

19.     Plaintiff Niblock has stayed relevant in lacrosse as she is an umpire in the area for high schools and club teams.

20.     Plaintiff Niblock has an interest and would join a varsity lacrosse team  if UK offered one.

21.     Plaintiff Niblock also played competitive field hockey in high school.

22.     She has played field hockey since childhood and played at a high level competitively throughout high school.

23.     She would also be interested in trying out and joining a varsity field hockey team if UK offered one if lacrosse was not available.

24.     She would currently join the field hockey team if UK had not eliminated the varsity field hockey team.

25.     Plaintiff Niblock is a senior during the 2019-2020 school year and is a resident of Lexington, Kentucky.

*Defendants*

26.     Defendant University of Kentucky is an Educational Corporation formed under existing state law in the state of Kentucky. The University of Kentucky's campus and principal place of business is located at 101 Main Building, Lexington, Kentucky, which is within this Court's jurisdiction.

27.     Defendant Board of Trustees is the final authority in all matters affecting Defendant UK and exercises jurisdiction over the institution's financial, education, and other policies and its relationship with state and federal governments and governs in Lexington, Kentucky.

28.     Defendant Mitch Barnhart is the Director of Athletics located at the Joe Craft Center in Lexington, Kentucky.

29.     Defendant Eli Capilouto is the President of Defendant UK and is located at 101 Main Building in Lexington, KY.

30.     Since the passage of Title IX, Defendants have received and continue to receive federal financial assistance and the benefits associated with such assistance.

## CLASS ACTION ALLEGATIONS

31.     The named female Plaintiffs bring this action on behalf of themselves and on behalf of a class of all those similarly situated both now and in the future pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2).

32.     All class members are aggrieved persons under federal civil rights law as a result of the actions, policies, and practices of Defendants. Plaintiffs seek declaratory and injunctive relief on behalf of themselves and all class members to prevent Defendants from engaging in future illegal conduct and to rectify the effects of present and past discrimination.

33.     This matter is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2).

34.     The class members are so numerous as to make the joinder of all of them impracticable. On information and belief, there are more than 11,000 female students at UK, a substantial number of whom would participate in intercollegiate athletics if additional participation opportunities were available to them and if the participants received the same benefits and treatment provided to other varsity athletes. In addition, thousands of potential future female students at UK who currently participate in sports at high schools and community colleges in Kentucky or other states, or who participate in organized sports associations in Kentucky and other states, would participate in intercollegiate athletics at UK if the opportunity to do so existed but will be denied the opportunity to do so or will be deterred from doing so by the lack of such opportunity. Such future students are putative class members whose joinder in this action is impractical.

35.    There are questions of law and fact common to the class members. Among the questions of law and fact common to the class is: (1) whether the practices and conduct of Defendants, as described below, violate the class members' right to enjoy the equitable benefits of UK's athletic program; (2) whether Defendants deprive female students at UK of equitable athletic participation opportunities; (3) whether Defendants deprive female students at UK of equitable athletic financial assistance; and (4) whether Defendants violate Title IX, the Equal Protection Clause of the U.S. Constitution by refusing to provide equitable female athletic participation opportunities and equitable financial athletic assistance. These common questions of law and fact predominate over questions affecting individual class members.

36.    The Plaintiffs seek to represent a class of all present, prospective, and future female students at UK who are harmed by and want to end UK's sex discrimination in: a) the allocation of athletic participation opportunities; b) the allocation of athletic financial assistance; and c) the allocation of benefits provided to varsity athletics. The female Plaintiffs seek to represent a class of all present, prospective, and future female students at UK who want to participate in the eliminated varsity sports of field hockey or who want to participate in other varsity sports not offered to women by UK. They also seek to represent those female student athletes who are deterred from enrolling at UK because it does not offer women athletic opportunities as required by Title IX.

37.    The Plaintiffs seek to represent the proposed class because joinder of all class members and all persons harmed by the ongoing sex discrimination in Defendants' varsity athletic program is not just impracticable, but impossible.

38.    The proposed class is known to exist, but the identity of its members is unknown and will continue to change without specific names during this litigation because of the nature of college enrollment and athletic participation. Students at UK generally aim to graduate four years after they matriculate. Athletes are eligible for only four years, according to the rules of the National Collegiate Athletic Association (NCAA). Accordingly, the members of the class harmed by Defendant UK's discriminatory actions constantly change as each class of students graduate and as another class of students enrolls at UK.

39.    Not all members of the plaintiff class are currently identifiable because the class includes prospective and future students who will enroll at UK during this litigation or who will be deterred from enrolling at UK because of Defendant's failure to provide athletic participation opportunities for female student-athletes, including the sports in which they want to participate.

40.    Not all members of the plaintiff class are currently identifiable because the class includes not only lacrosse and field hockey student athletes, but also all present, prospective, and future female students who have an interest and ability to participate in other varsity intercollegiate sports that are not offered at Defendant UK.

41.    It is unknown how many present, prospective, or future female student athletes would enroll at Defendant UK or would participate in athletics at the university if it stopped discriminating against women. The hundreds of additional student-athletes who might apply, who might be recruited, and who might participate in athletics at Defendant UK if, for example, it added the approximately 183 athletic opportunities necessary to reach proportional opportunities under current enrollment numbers at Defendant UK are too numerous to make joinder practicable.

42.    Joinder is impracticable because the class includes members whose identities are not currently known. On information and belief, there are present female students at UK whose names are currently unknown but who would participate in varsity athletics at UK if Defendants did not intentionally discriminate in the operation of its athletic program or if Defendants offered the sports or events in which they want to participate. There are also present female student athletes at UK who do not receive an equitable allocation of athletic financial assistance or the benefits provided to male varsity athletics.

43.    The Plaintiffs satisfy the "commonality" requirement of Federal Rule of Civil Procedure 23(a)(2) because they share questions of law and fact in common with the proposed class, particularly whether Defendant UK is violating Title IX by failing to provide female student athletes with an opportunity to participate in varsity intercollegiate athletics. Because Title IX requires comparison of the sex-segregated men's and women's athletic opportunities as a whole, the Title IX issues in this action are inherently class-based.

44.    The Plaintiffs satisfy the "typicality" requirement of Federal Rule of Civil Procedure 23(a)(3) because their claims are typical of those of the proposed class. They all have been denied, are continuing to be denied, or will be denied an opportunity to participate in varsity intercollegiate athletics at Defendant UK because of its ongoing intentional sex discrimination.

45.    Each Plaintiff is a member of the proposed class in that she has been and continues to be denied equal athletic participation and scholarship opportunities at UK. Plaintiffs will fairly and adequately represent the interests of the class pursuant to Federal Rules of Civil Procedure 23(a)(4). They intend to prosecute this action vigorously in order to secure fair and adequate injunctive relief for the entire class.

10

46.     The Plaintiffs satisfy the requirement that class certification would be superior to other methods available for the fair and efficient adjudication of the controversy required by Federal Rule of Civil Procedure 23(b)(2) because Defendant UK has acted or refused to act on grounds generally applicable to the class—denying female student athletes an opportunity to participate in varsity intercollegiate athletics, thereby making final declaratory and injunctive relief appropriate with respect to the class as a whole.

47.     Undersigned counsel has devoted substantial and sufficient efforts to identify and investigate potential claims in this action, to developing knowledge of the applicable law, and has sufficient resources to commit to representing this putative class as interim counsel under Federal Rule of Civil Procedure 23(g)(3) until such time as this Court determines whether to certify the action as a class action. They are represented by counsel with extensive experience in Title IX, civil rights, civil liberties, and class action litigation. They intend to vigorously prosecute this action to obtain the relief sought on behalf of the class.

48.     Any compensatory damages sought by the class are incidental to the injunctive relief and thus certification as a Rule 23(b)(2) class is appropriate

## GENERAL ALLEGATIONS

***The Department of Education Interpretations of Title IX Compliance***

49.     According to the most recent publicly available report that UK filed with the United States Department of Education pursuant to the Equity in Athletics Disclosure Act, 20 U.S.C. § 1092, during the 2017-2018 academic year, women comprised approximately 55 percent of the student population. However, women comprised only 41 percent of the participants on the intercollegiate varsity teams offered by UK. Upon information and belief, the disparity between

the rate of participation in intercollegiate athletics among women and women's enrollment is approximately the same today.

50.     UK has a practice of providing its male students with greater athletic opportunities which has continued over time. As alleged above, UK does not offer female students' opportunities to participate in intercollegiate athletics substantially proportionate to the percentage of women enrolled as students. On information and belief, UK has established and maintained its men's intercollegiate athletic teams based upon different criteria than women's teams, relying to a greater extent, in the case of men, on recruiting athletes from various sources to determine which teams to establish and maintain.

51.     UK does not have a history or continuing practice of expanding intercollegiate athletic opportunities for women students to accommodate their existing or developing interests. For example, at various periods of time since the passage of Title IX, female participation opportunities for women have actually decreased even though the number of female students has steadily risen over the years. In addition, UK has eliminated women's varsity teams, including field hockey.

52.     UK has not fully and effectively satisfied the interest of women students in intercollegiate varsity athletic opportunities. In particular,

      a)     UK cut women from the varsity field hockey program on the basis of their gender.

      b)     Several women's sports club teams, including field hockey, lacrosse, triathlon and equestrian have expressed interest in obtaining varsity status at UK.

      c)     UK has failed to effectively respond to such interest and has denied the varsity applications of at least three registered sports club teams, *i.e.*, field hockey,

lacrosse, and triathlon. As a result, the members of these teams and all other interested teams, compete without the significant benefits that UK provides to varsity athletes, such as health insurance, paid travel to competitions, free coaching, access to personal training, preferential class scheduling, financial scholarships, and university paid organization of all practices and competition.

d)    Many other women student athletes at UK have an interest in varsity opportunities and athletic financial assistance at UK that has not been satisfied.

e)    Many current and future highly skilled high school and community college female athletes have an interest in varsity opportunities and athletic financial assistance that UK has not addressed despite the fact that it addresses the interests of male students by establishing varsity teams and recruiting athletes from high schools and community colleges to fill the roster of those teams

## **FACTUAL ALLEGATIONS**

53.    At the beginning of the 2019/2020 academic and sports calendar, Defendant UK sponsors men's and women's teams, including baseball, men's and women's basketball, men's and women's cross country, football, men's and women's golf, women's gymnastics, men's and women's rifle, men's and women's soccer, softball, men's and women's swimming and diving, men's and women's tennis, men's and women's track and field, and volleyball.

54.    Defendant UK is a member of the NCAA and the SEC Conference, and participates in Division I, the highest level of intercollegiate competition.

55.    In choosing which sports it will offer to the students of each sex, UK chooses how many varsity athletic participation opportunities it provides to male students and how many athletic participation opportunities it provides to female students. This fact makes athletics unlike other

educational programs in which male and female students participate together or compete against each other for the same opportunities or class slots on an equal basis.

56.     On information and belief, Defendants choose and have chosen which sports they provide to each sex in a manner that provides and has provided its male students with proportionally more opportunities to participate in varsity intercollegiate athletics than it has provided its female students, thus denying female students an equitable opportunity to participate in this educational program.

57.     UK is a member of the NCAA and participates at the highest level of intercollegiate competition—Division I. As such, UK offers athletic financial assistance (i.e., athletic scholarships) to members of its varsity athletic teams.

### History of Lacrosse

58.     Lacrosse began as a club team in 1976 when the team traveled to Ohio on weekends and competed in games.

59.     In 2004, there was a resurgence in lacrosse with the club team competing with regular schedules.

60.     The lacrosse club team averages 20-22 female student athletes.

61.     The club team competes against other schools in Kentucky, the Midwest and the East.

62.     In 2004, members of female club lacrosse team met with the Athletics Director Mitch Barnhart to educate him on lacrosse and its rising popularity across the country with the hope of making lacrosse a varsity sport.

63.    Despite AD Barnhart being provided information on lacrosse and having discussions with interested student athletes in adding the sport, lacrosse was not made a varsity sport.

64.    Female student athletes playing lacrosse made additional efforts to Defendants to have lacrosse added as a varsity sport starting in 2018 to the present.

65.    Defendants denied the female student athletes' requests to add lacrosse.

66.    Adding lacrosse as a varsity sport would add approximately 30 female opportunities and 12 scholarships.

***History of Field Hockey***

67.    Defendant UK offered field hockey since the 1930s.

68.    Defendant UK offered field hockey as a varsity sport in 1974 but cut the varsity program in 1976.

69.    Field hockey has remained a club sport since 1976 through the present day averaging between 22-26 female student athletes.

70.    The club field hockey team has been competing throughout Kentucky, the Midwest and the East.

71.    The club field hockey team has been very successful having several undefeated seasons and having won championships.

72.    Defendants have been approached by club field hockey players asking to be added as a varsity sport.

73.    Defendants have denied the female student athlete's requests to implement a varsity field hockey team on several occasions between 2018 and the present.

74.    Adding field hockey as a varsity sport would add approximately 23 female opportunities and 12 scholarships.

***Additional Sports that Could be Elevated to Varsity***

75.    While the above-mentioned sports have all approached Defendants about specifically being added as a varsity sport, there are other sports that also could be added.

76.    Triathlon is the fastest growing sport in the country at the collegiate level UK sponsors a triathlon club team.

77.    The COO of Triathlon USA offered UK a grant funded by the Triathlon Foundation of $150,000 to help launch the varsity program, but Defendants refused.

78.    Adding triathlon as a varsity sport would add approximately 9-13 female opportunities and 6.5 scholarships.

79.    Equestrian is a club sport at UK and could be added as a varsity sport offering approximately 38 female opportunities and 15 scholarships.

80.    Rowing could be added as a varsity sport offering approximately 47 female opportunities and 20 scholarships.

81.    Fencing could be added as a varsity sport offering approximately 16 women's opportunities and 5 scholarships.

***Recruiting***

82.    Defendant UK prides itself on obtaining the best student athletes that fit best into the athletic department's mission to establish UK Athletics among the truly elite athletics departments in America.

83.    Defendants recruit the student athletes locally, nationally and internationally.

84. Student athletes are recruited coast to coast across the United States from Pennsylvania to California and everything in between.

85. Defendant UK also recruits student athletes from Germany, India, Jamaica, and Namibia, just to name a few.

86. Defendant UK has the resources and ability to recruit the best athletes that fit into their programs.

## COUNT I

### Title IX
### (Unequal Athletic Participation)
### (Against Defendant UK and The Board of Trustees)

87. Plaintiffs re-allege and incorporate by reference all of the foregoing allegations.

88. The Plaintiffs bring this claim as a class action as set forth in the Class Allegations.

89. Title IX, enacted in 1972, provides in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, . . .

> 20 U.S.C. § 1681(a). The Civil Rights Restoration Act of 1987 made Congress' intent plain that "program or activity," as used in Title IX, applies to any program or activity so long as any part of the educational institution receives federal financial assistance. 20 U.S.C. § 1687. Thus, UK is subject to Title IX even if none of the funding for its athletic programs comes from federal sources.

90. In 1975, the United States Department of Health, Education and Welfare ("HEW") (the predecessor of the United States Department of Education ("DOE") adopted regulations interpreting Title IX. These regulations are codified at 34 C.F.R. Part 106 (The DOE regulations adopting the HEW regulations are at 45 C.F.R. Part 86) (the "Regulations").

91.     With regard to athletic programs, section 106.41(a) of 34 C.F.R. provides that intercollegiate athletics are included within the "program or activity" requirements of Title IX:

> No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis.

92.     34 C.F.R. § 106.41(c) specifies the factors for determining the existence of equal athletic opportunity, including whether the selection of sports and levels of competition effectively accommodate the interest and abilities of both sexes. In 1979, the DOE's Office for Civil Rights ("OCR") issued a policy interpretation of Title IX and the Regulations. This policy interpretation is found at 44 Federal Register 71,413 *et seq.* (1979) (the "Policy Interpretation").

93.     The Policy Interpretation provides that, in order to comply with Title IX and 34 C.F.R. §106.41(c), schools must provide equal athletic opportunities in three general areas: (1) scholarships; (2) participation opportunities; and (3) treatment and benefits.

94.     According to the Regulations, to the extent that an educational institution provides scholarship funding, "it must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in . . . intercollegiate athletics." 34 C.F.R. § 106.37(c); Policy Interpretation, 44 Fed. Reg. at 71,415.

95.     OCR's 1979 Policy Interpretation sets forth a three-prong test for determining equal athletic participation opportunities under Title IX. According to the Regulations and Policy Interpretation, a school provides equal athletic participation opportunities only if it can satisfy one of the following three prongs:

(1) [Prong One:] Whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments; or

(2) [Prong Two:] Where the members of one sex have been and are under-represented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or

(3) [Prong Three:] Where the members of one sex are underrepresented among intercollegiate athletes, and the institution cannot show a continuing practice of program expansion such as that cited above, whether it can be demonstrated that the interests and abilities of the members of that sex have been fully and effectively accommodated by the present program.

Policy Interpretation, 44 Fed. Reg. at 71,418.

96.     The Regulations require that sponsors of intercollegiate athletics (such as UK) take such remedial actions as are necessary to overcome the effects of sex discrimination in violation of Title IX. 34 C.F.R. § 106.3(a). The Regulations further require that sponsors of intercollegiate athletics programs comply with the Regulations within three years of their effective date (which was July 21, 1975).

97.     By offering certain opportunities to male students to participate in intercollegiate athletics, Defendant UK has demonstrated its belief that athletic opportunities provide educational benefits that should be supported by the University. Plaintiffs agree that athletic opportunities provide valuable educational benefits. For this very reason, the Plaintiffs—and the class they represent—should have equitable access and opportunity to receive the benefits that the male students at UK receive from intercollegiate athletics. UK historically has not provided and currently does not provide its female students with such equitable access and opportunity.

98.     Defendants determine the number of athletic participation opportunities that it will provide to male and female students by choosing which sports it will offer to each sex by deciding how many athletes it will allow to participate on each sports team.

99.     Defendants fail to provide female students an equitable opportunity to participate in varsity intercollegiate athletics in violation of Title IX and 34 C.F.R. §106.41(c)(1).

100.    Defendants fail to comply with each prong of the three-part test described above. In particular:

> (1)     The ratio of female to male athletes at UK is not substantially proportionate to the overall ratio of female to male undergraduate students at Defendant.
>
> (2)     UK does not have a history or continuing practice of athletics program expansion for women.
>
> (3)     UK has failed to fully and effectively accommodate the athletic interests and abilities of its female students by, among other things, by refusing to add additional sports where there is interest.

101.    According to information provided by Defendants to the federal government in its annual Equity in Athletics Disclosure Act reports, Defendants' female undergraduate enrollment rate is approximately 60% while its female athletic participation rate is only about 44%. Furthermore, on information and belief, Defendants underreport male participation in varsity athletics and overreports female participation. Defendants do not provide female students with varsity athletic participation opportunities in a number substantially proportionate to female undergraduate enrollment.

102.    Defendants failed to meet the 1978 regulatory deadline for compliance with Title IX's requirement for equity in athletic participation opportunities. Defendant UK has never met its compliance obligations and has not added any new female varsity sports in over 10 years. Defendants cannot show a history or continuing progress of program expansion for women.

103.    Plaintiffs have the interest and ability to participate in women's varsity field hockey
and lacrosse. High school students (the source of Defendants' incoming, prospective, and future
students) also have the interest and ability to participate in field hockey and lacrosse. Competition
exists in field hockey and lacrosse because they are a major NCAA sport and UK has offered club
play in these sports for many years.

104.    Plaintiffs seek a declaration that Defendants engaged in disparate treatment on the
basis of sex by failing to offer female students an equal opportunity to participate in intercollegiate
athletics.

105.    As a result of Defendants' discriminatory actions, the Plaintiffs have been denied
and/or imminently will be denied their civil right to pursue an equal opportunity to participate in
varsity intercollegiate athletics. They have been denied the educational, economic, physical,
psychological, and social benefits of athletic participation. They have incurred or imminently will
incur economic and compensatory damages associated with, among other things, lost opportunities,
applying/transferring to other schools, moving to other schools, transferring/losing graduation
credits, emotional distress, lost self-esteem, humiliation, and the denial of equal opportunity
because of sex.

## COUNT II
### Title IX
### (Unequal Allocation of Athletic Financial Assistance)
### (Against UK and Board of Trustees)

106.    Plaintiffs reallege and incorporate herein by this reference all of the foregoing
paragraphs of this complaint.

107.    The Plaintiffs bring this claim as a class action as set forth under the Class
Allegations.

108.    UK provides athletic financial assistance to some of its varsity athletes.

109.    Under Title IX, UK must provide its female students with an equal allocation of any athletic financial assistance. Under 34 C.F.R. § 106.37, an equal allocation means that UK must provide its female athletes with athletic financial assistance in the same proportion that it allocates athletic participation opportunities.

110.    Defendant fails to provide female student athletes with an equal allocation of athletic financial assistance. This failure constitutes disparate treatment sex discrimination in violation of Title IX and 34 C.F.R. § 106.37.

111.    Plaintiffs are harmed by Defendant's failure to provide its female students with an equal allocation of athletic financial assistance. Such harm includes lost educational opportunities, financial assistance, and lost quality in participation opportunities. It also includes emotional distress, pain, anxiety, and other damages to be proven at trial. Accordingly, they are entitled to the relief requested herein.

## COUNT III
### Title IX
### (Unequal Allocation of Athletic Treatment and Benefits)
### (Against UK and Board of Trustees)

112.    Plaintiffs reallege and incorporate herein by this reference all of the foregoing paragraphs of this complaint.

113.    The Plaintiffs bring this claim as a class action as set forth under the Class allegations.

114.    UK provides its varsity student athletes with certain benefits, including but not limited to, equipment, supplies, uniforms, locker rooms, scheduling for competitions, transportation and accommodations for travel, per diem for travel, coaching, tutoring and academic support services, practice and competition facilities, medical and training services, weight training

and conditioning services, housing and dining services, sports information and publicity services, recruiting, video support, and other services.

115.    Under Title IX and 34 C.F.R. § 106.41(c), UK must allocate these benefits equally between male athletes and female athletes. On a program-wide basis, it must provide female athletes with benefits that are comparable to those that it provides to male athletes.

116.    Defendants fail to provide female student athletes with an equal allocation of these benefits. This failure constitutes disparate treatment sex discrimination in violation of Title IX.

117.    UK has not sufficiently allocated the amount of benefits (or the resources and budgets necessary to provide the benefits) it provides to female athletes.

118.    UK has failed to provide sufficient benefits (or the resources and budgets necessary to purchase the benefits) to its women's varsity athletic teams despite requiring that they carry more athletes. Meanwhile, UK has not decreased the benefits that it provides to men's varsity athletic teams even though they now carry fewer athletes. As a result, while each male athlete now receives more or better benefits, each female athlete now receives fewer or worse benefits than the males are receiving.

119.    Defendant fails to provide equal athletic benefits in some, or all of the categories set forth in the Regulations and the Policy Interpretation, including but not limited to:

      1. The provision of equipment, uniforms, and supplies;

      2. Scheduling of games and practice time;

      3. Travel, transportation, and per diem allowance;

      4. Opportunity to receive coaching and academic tutoring;

      5. Assignment and compensation of coaches and tutors;

      6. Provision of locker rooms, practice and competitive facilities;

7. Provision of medical and training services;

8. Provision of housing and dining facilities and services;

9. Publicity and sports information services;

10. Administrative support;

11. Recruiting resources and support; and

12. Resources necessary to provide any of the foregoing benefits or to provide the female athletes with a genuine Division I athletic experience.

120.    Plaintiffs are harmed by Defendants' failure to provide its female student athletes with an equal allocation of benefits and resources. Such harm includes lost educational opportunities, lost competitive advantage, and less quality in participation opportunities. It also includes emotional distress, pain, anxiety, and other damages to be proven at trial. Accordingly, they are entitled to the relief requested herein.

**COUNT IV**
**Equal Protection**
**(Against All Defendants)**

121.    Plaintiffs re-allege and incorporate by reference all of the foregoing allegations.

122.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution mandates that "No state shall… deny to any person within its jurisdiction the equal protection of the law."

123.    The Amendment is enforceable through 42 U.S.C. § 1983, which provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

124.    Under Section 1983, Defendants may be held liable for their violation of the rights of female student athletes under the Fourteenth Amendment, namely by treating them differently than male student athletes.

125.    Defendants intentionally discriminate against female students including Plaintiffs and intentionally deprive them of their right to equal protection under the Fourteenth Amendment to the U.S. Constitution by, among other things, treating them differently from male students by: (1) failing to provide them with equal athletic participation opportunities (including all the benefits, advantages, privileges, services, and access to facilities and coaching provided in connection with varsity athletic participation opportunities); and (2) failing to provide them with equal athletic financial assistance.

126.    When Defendants engaged in the discriminatory actions described above, they were acting under color of law under 42 U.S.C. § 1983.

127.    Defendants' discriminatory actions violate the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, as enforced through Section 1983.

128.    Each of the individual Defendants had knowledge of, participated in or otherwise had authority over and approved the discriminatory decisions made and actions taken that deny Plaintiffs of their right to equal protection. Their actions, which continue to this day, constitute a knowing disregard and deliberate indifference for Plaintiffs' constitutional rights. Accordingly, each of the individual Defendants is individually liable for the discriminatory actions.

129.    Plaintiffs seek injunctive relief that requires Defendants to provide them with equal protection to the class by offering equal athletic participation and scholarship opportunities for female athletes.

130.    As a result of Defendants' discriminatory actions, Plaintiffs have been denied their constitutional right to equal protection and to enjoy an equal opportunity to participate in varsity athletics and to receive athletic financial assistance. Plaintiffs have further incurred damages, including, among other things, the damages associated with lost educational opportunities, increased education expenses, emotional distress, lost self-esteem and confidence, humiliation, and other compensatory damages that result from being denied equal opportunity on the basis of sex.

## INJUNCTIVE RELIEF

131.    Defendants' unlawful acts deprived Plaintiffs of rights guaranteed by federal law, and the U.S. Constitution. Plaintiffs are entitled to injunctive relief to end Defendants' discriminatory actions, and to compel Defendants to provide equal athletic participation and scholarship opportunities for female students by establishing varsity opportunities for women at UK sufficient to eliminate the gender disparities in athletic opportunities and that reflect interest and ability of female student athletes in field hockey, lacrosse, and/or other sports.

132.    Failure to grant the injunctive relief requested will result in irreparable harm in that Plaintiffs' rights will continue to be violated and they will forever be denied the opportunity to participate in college athletics. Plaintiffs do not have an adequate remedy at law for this harm.

133.    The continuing harm caused by Defendants' discriminatory actions far outweighs any possible harm that granting injunctive relief might cause Defendants. In fact, Plaintiffs can conceive of no harm that Defendants will suffer by increasing varsity athletic participation and scholarship opportunities for female student athletes at UK. Meanwhile, Plaintiffs believe that Defendants will gain public relations and enrollment advantages by complying with federal civil rights laws.

134.    Finally, the injunctive relief that Plaintiffs seek would in no way disserve the public interest but, on the contrary, would benefit the public and would promote compliance with and full equality before the law.

**ATTORNEYS' FEES**

135.    Plaintiffs have been required to retain counsel to prosecute this action. They are entitled to recover reasonable attorneys' fees and expenses under 42 U.S.C. §1988. They are also entitled to recover costs under Federal Rules of Civil Procedure, Rule 54(d) and other applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

A.    Certify the first claim as a class action on behalf of all present, prospective, and future female students at UK who seek to participate in varsity intercollegiate lacrosse, field hockey, or any other sport not currently offered by University of Kentucky and appoint Plaintiffs' counsel as Class Counsel pursuant to the Federal Rule of Civil Procedure, 23(g);

B.    Enter an order declaring that Defendants violated and continue to violate Plaintiffs' civil and constitutional rights under Title IX and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, by discriminating against female students on the basis of sex by, among other things: (1) failing to provide female students with equal athletic participation opportunities (including all the benefits, advantages, privileges, services, and access to facilities and coaching provided in connection with varsity athletic participation opportunities); and (2) failing to provide female students with equal athletic financial assistance.

C.    Issue an injunctive relief order: (1) restraining Defendants from engaging in sex discrimination in the administration of the UK athletic programs; (2) requiring Defendants to

increase athletic participation opportunities for female students by establishing women's varsity teams that reflect interest and ability of female athletes in field hockey, lacrosse, and/or other sports (with all the benefits, advantages, privileges, services, and access to facilities and coaching provided in connection with varsity athletic participation opportunities) or other appropriate measures; and (3) requiring Defendants to increase athletic financial assistance for female athletes.

D.      Award the Plaintiffs compensatory damages and other monetary relief as permitted by law, compensation for substantial injury associated with, among other things, lost professional status and reputation, lost opportunities for employment and professional acclaim, costs of seeking opportunities at other schools, lost past and future employment, lost compensation and benefits, humiliation, emotional pain and distress, lost self-esteem and other injuries set forth in this Complaint, in an amount to be determined at trial.

E.      Award Plaintiffs their reasonable attorneys' fees and expenses;

F.      Maintain jurisdiction over this action to monitor Defendants' compliance with this Court's orders; and

G.      Order such other and further relief as the Court deems appropriate.

**PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL ISSUES TRIABLE BY A JURY.**

Respectfully submitted,

NEWKIRK ZWAGERMAN, P.L.C.

*/s/ Jill M. Zwagerman*
Jill Zwagerman AT0000324
Beatriz Mate-Kodjo AT0012331
Lori Bullock AT0012240
521 E. Locust Street, Suite 300
Des Moines, IA 50309
Telephone: 515-883-2000
Email: jzwagerman@newkirklaw.com

Email: bmate-kodjo@newkirklaw.com
Email: lbullock@newkirklaw.com


BONAR, BUCHER & RANKIN, PSC
Barbara Bonar
Sophia Stevenson
3611 Decoursey Avenue
Covington, KY 41015
Telephone: 859-431-3333
Email: bdbonar@lawatbdb.com
Email: Sophia.stevenson@lawatbdb.com


ATTORNEYS FOR PLAINTIFFS