UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON
CIVIL ACTION NO. 5:19-CV-00394-KKC
-*electronically filed*-

ELIZABETH NIBLOCK, Individually
and on behalf of all those similarly
situated                                                                                                        PLAINTIFF

v.         **DEFENDANTS' REPLY IN SUPPORT OF
                MOTION TO DISMISS**

UNIVERSITY OF KENTUCKY,
BOARD OF TRUSTEES, MITCH
BARNHART and ELI CAPILOUTO                                                                    DEFENDANT

\*\*\*\*\*  \*\*\*\*\*  \*\*\*\*\*

Defendants University of Kentucky, Mitch Barnhart in his official capacity, and Eli Capilouto in his official capacity, through counsel, file this reply in support of their motion to dismiss (D.E. 11).[1]

In her Response, Plaintiff invites this Court to ignore Supreme Court and Sixth Circuit precedent as well as the text of both the statute and the 1975 Regulation. This Court must reject that invitation. Plaintiff makes four arguments. First, while federal appellate courts addressing the issue have recognized that *Kisor* fundamentally changed the rules for when federal courts must defer to an agency's interpretation of its own regulations, Plaintiff claims this Court should simply ignore *Kisor*. As Defendants demonstrated, the 1975 Regulation is unambiguous, the Department's Interpretation is unreasonable, and the constant Reinterpretations with every change of administration are not authoritative. Because Plaintiff does not seriously contest those showings, *Kisor* commands this Court to refrain from deference. Second, despite vague and

---

[1] Contemporaneous with Plaintiff's response to Defendants' motion to dismiss, Plaintiff filed a notice of voluntary dismissal, dismissing her claims against the University's Board of Trustees. (D.E. 17).

conclusory allegations, Plaintiff argues she has pled sufficient facts to state a claim under Title IX and § 1983 for violation of the Equal Protection Clause. Third, despite overwhelming authority from the Supreme Court and Sixth Circuit, Plaintiff argues sovereign immunity has no impact on Plaintiff's purported damages claims under both Title IX and § 1983 or her request for an injunction to enforce the Department of Education's unreasonable interpretation of an unambiguous Regulation. Fourth, despite her lack of evidence to contradict facts contained in the supplemental materials attached to Defendants' motion, Plaintiff argues the Court should ignore those facts.

Additionally, Plaintiff clarifies that she is asserting only official capacity claims against Mitch Barnhart and Eli Capilouto; Plaintiff states she is not asserting any individual capacity claims. (D.E. 16) at 29-30. Further, Plaintiff voluntarily dismissed all claims against the University's Board of Trustees. (D.E. 17). For the reasons stated below, Plaintiff's claims must be dismissed in their entirety, with prejudice.

## ARGUMENT

I. **This Court must apply *Kisor*.**

Plaintiff ignores the impact of *Kisor*, which upended years of precedent where courts essentially gave automatic deference to agency interpretations of their own regulations. When Plaintiff does mention *Kisor*, she contends it changed nothing; it did not narrow or alter the scope of *Auer* deference. She is mistaken. *Kisor* was a fundamental change in the methodology a court must follow to determine potential *Auer* deference. Ignoring *Kisor*'s impact is misguided.

Under *Auer*, courts were required to defer to an agency's interpretation of its own regulations unless the interpretation was "plainly erroneous or inconsistent with that regulation." *Auer v. Robbins* 519 U.S. 452, 461 (1997). *Kisor* restricted *Auer* deference to only certain

circumstances. Under *Kisor*, this court must determine whether the 1975 Regulation is *truly* ambiguous, utilizing all of the tools of statutory construction. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). If, and only if, the 1975 Regulation is ambiguous, then the Court must determine for itself whether the agency's Interpretation and multiple subsequent Reinterpretations are entitled to deference under the factors provided in *Kisor*, beginning with whether the Department of Education's 1979 Interpretation and subsequent Reinterpretations are reasonable. *Id.* If the 1979 Interpretation and subsequent Reinterpretations are reasonable then the Court must determine whether the Department's Interpretations are entitled to controlling weight, which occurs *only* if they represent the Department's fair and considered judgment. *Id.* at 2416-17. Only when the Department of Education's Interpretation and subsequent Reinterpretations clear *all* of these hurdles are they entitled to deference under *Auer* and *Kisor*.

In the six months since *Kisor*, federal appellate courts have recognized that while *Kisor* did not overrule *Auer*, *Kisor* cabined *Auer* deference to specific circumstances and requires the Court to engage in an independent analysis of whether deference is appropriate. *See, e.g.*, *Ovalle v. Attorney General United States*, --- F. Appd'x ---, 2019 WL 6127419 (3d Cir. 2019) ("But on another reading, *Desai* gives *Auer* deference to the BIA's view that the post-departure bar deprives it of jurisdiction. That reasoning, however, does not survive the Supreme Court's recent decision in *Kisor*."); *Altera Corporation & Subsidiaries v. Commissioner of Internal Revenue*, 941 F.3d 1200 (9th Cir. 2019) (Mem.) ("Given the very detailed limitations on *Auer* deference spelled out in *Kisor*, virtually none of which Treasury's actions satisfy, it is clear that such deference would not be available even if not disclaimed."); *see also O'Neal v. Denn-Ohio, LLC*, 2020 WL 210801 (Slip Copy) (N.D. Oh. 2020) (noting that "in *Kisor v. Wilkie*, the Court

explained that *Auer* deference is only appropriate under certain circumstances" and finding the Department of Labor's interpretation of the Dual Jobs Regulation to be unreasonable).

Plaintiff is correct that there is pre-*Kisor* Sixth Circuit precedent interpreting Title IX and deferring to the Department's Interpretations. Yet, that case law was decided based on nearly automatic deference. Prior to *Kisor*, the Sixth Circuit examined reasonableness through a different lens, holding the 1979 Policy Interpretation was entitled to "controlling weight unless [it was] arbitrary, capricious, or manifestly contrary to the statute." *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 615 (6th Cir. 2002). This was a perfunctory analysis in line—at the time—with *Auer*, with the Court taking a single paragraph to determine the 1979 Interpretation was entitled to deference. The Sixth Circuit now recognizes that *Kisor* shook up the analysis. *United States v. Owen*, 940 F.3d 308 (6th Cir. 2019) ("Where an agency rule is considered ambiguous, we typically afford some deference to the agency's interpretation of the rule. But when to do so, and what standards to apply when we do, are at the moment matters of some debate.") (citing *Kisor*, 139 S. Ct. at 2416). *Kisor* sets forth a more demanding standard; in light of *Kisor*, a new analysis of Title IX and the Department's Interpretations is appropriate and automatic deference is not.[2]

Indeed, the very idea of deferring to an agency's interpretation "tells the judge that he must interpret these binding laws to mean not what he thinks they mean, but what an executive agency says they mean . . . [deference] thus means that, far from being 'kept distinct,' the powers of making, enforcing, and interpreting laws are united in the same hands—and in the process a

---

[2] *See O'Neal v. Denn-Ohio LLC*, 2020 WL 210801 (Slip Copy) (N.D. Oh. 2020) (noting that "in *Kisor v. Wilkie*, the Court explained that *Auer* deference is only appropriate under certain circumstances" and analyzing deference through the test provided by *Kisor*). In, the event this Court concludes that it must defer to the Department of Education's Interpretations or that it is bound by Sixth Circuit precedent applying *Auer* deference under the different standard utilized prior to *Kisor*, the University asks this Court to certify the issue for immediate interlocutory appeal under 28 U.S.C. § 1292(b), so the Sixth Circuit can determine *Kisor's* impact on *Miami University* and other Sixth Circuit precedent applying *Auer* deference under the pre-*Kisor* standard.

cornerstone rule of law is compromised." *Kisor*, 139 S. Ct. at 2439 (Gorsuch, joined by Thomas, Alito, and Kavanaugh, JJ., concurring).

As the Chief Justice made clear, after *Kisor*, deference is limited to situations where "the underlying regulation must be genuinely ambiguous; the agency's interpretation must be reasonable and must reflect its authoritative, expertise-based, and fair and considered judgment; and the agency must take account of reliance interests and avoid unfair surprise." *Kisor* 139 S. Ct. at 2424 (Roberts, C.J., concurring). In their motion, Defendants explained why none of those conditions are met here. (D.E. 11) at 11-20. Plaintiff does not seriously contest that showing. If the regulation is not ambiguous, deference to any agency interpretation is inappropriate. As the Seventh Circuit observed, "[a]n agency is entitled to reinterpret an ambiguous regulation, *see National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005), but cannot rewrite an unambiguous one through the guise of interpretation. Change requires rulemaking." *Baez-Sanchez v. Barr*, --- F.3d ---, 2020 WL 370536, at *2 (7th Cir. Jan. 23, 2020) (citations original).[3]

## II. Plaintiff cannot enforce the Department's Interpretation.

Plaintiff contends she is not suing to enforce the Department's 1979 Interpretation and subsequent Reinterpretations, but only the statutory text of Title IX and the 1975 Regulation. Specifically, Plaintiff argues "[r]ather than constituting the legal basis of Plaintiffs' claims, the Department of Education guidance cited in the Amended Complaint articulates guideposts for universities and courts to follow in assessing compliance with Title IX and further provide context for the course of conduct that UK engaged in." Plaintiff's Response (D.E. 16) at 20. Yet, the language of Plaintiff's Amended Complaint does not support this assertion. For example,

---

[3] Even if this Court concludes the 1975 Regulation is ambiguous, the Department's Interpretation is not reasonable and does not reflect its authoritative, expertise-based, or fair and considered judgment.

Count I of the Complaint perfunctorily cites the statute, then spends 15 paragraphs explaining why Plaintiff believes the University does not comply with the *Regulation* and the Department's Interpretation and Reinterpretations.[4] While other Courts have recognized a private cause of action for violations of Title IX based on the Department's Interpretation and Reinterpretations, those decisions were prior to *Kisor*; a legal landscape where courts were almost certain to grant *Auer* deference to the Department's interpretations. After *Kisor*, that landscape no longer exists.

As explained in Defendants' motion, nothing in the statute or in the 1975 Regulation supports Plaintiff's theory that the University of Kentucky must add a sport for women and that sport must be lacrosse or field hockey.

### III. The Amended Complaint fails to state a Title IX claim or 42 U.S.C. § 1983 claim for violation of the Equal Protection Clause.

#### A. Plaintiff fails to state a Title IX claim.

Plaintiff attempts to rely on purported factual disputes regarding *her* athletic interest and ability. However, *Plaintiff's* interest and ability alone is not enough to justify moving forward with a suit to add entire varsity *teams* to the University. Rather, Plaintiff must establish there is sufficient interest *and* ability to support a varsity team in a particular sport. The survey the University conducted—a survey the very Department of Education guidance Plaintiff relies on permits the University to utilize for compliance—demonstrates that even if there were sufficient interest, there is insufficient *ability* to field a varsity team in the sports Niblock seeks. As discussed in Defendants' principal brief, ability includes both objective ability to play at the

---

[4] Plaintiff reinforces that her claims are based on the Department's Interpretation and Reinterpretations by urging the Court to ignore a primary canon of statutory construction: looking first to the plain language of the statute. Plaintiffs' response asserts the Court would be in the position of re-inventing the wheel by looking solely at the plain text of the statute. Plaintiff's Response (D.E. 16) at 8. On the contrary, that is exactly what the Court should do. *See Barker v. Chesapeake & Ohio R.R.*, 959 F.2d 1361, 1366 (6th Cir. 1992) ("In interpreting a statutory provision, we first examine the statute's language. . . . If this language is clear and unambiguous, we can proceed no further in our examination except in very limited situations.") (internal citations omitted).

NCAA Division I level and willingness to accept the same governing body restrictions that are imposed on every single varsity athlete at the University, male and female alike. Other than pointing to 20-22 members of the club lacrosse team as potentially having sufficient interest and ability, Plaintiff makes no allegation that the full roster of club players would be willing to accept the additional time requirements and governing body restrictions necessary to play a NCAA Division I varsity sport.[5]

Plaintiff's assertion that the club lacrosse team is proof of sufficient interest and ability is particularly suspect given Plaintiff *does not allege* that she participates or has participated on the club team for either lacrosse or field hockey. Rather, she alleges only that she has remained relevant in lacrosse by serving as an umpire for local high school and club teams. Amended Complaint (D.E. 8) ¶ 19. These factual allegations, taken as true, simply do not establish sufficient interest and ability at the University to support an entire Division I varsity roster.

Plaintiff also attacks the sufficiency of the University's survey. Again, the very guidance Plaintiff hangs her hat on provides the University is permitted to rely on such surveys as a safe harbor to demonstrate compliance with Title IX. Under Plaintiff's theory, a private cause of action exists for *any* individual student who does not personally believe the University's survey is sufficient.

Plaintiff further asserts Defendants "are trying to persuade this court that they are in compliance with Title IX based on a survey that was provided and taken by *some* students in the registration process." Plaintiff's Response (D.E. 16) at 24 (emphasis added). In reality, that

---

[5] *See* Survey Results, Exhibit 6 to Defendants' Motion to Dismiss (D.E. 11-6) (providing that of 81 assertions of interest, there were zero assertions of willingness to accept governing body restrictions and only one assertion of objective ability to perform at the Division I level for Lacrosse).

survey was provided to and completed by over *12,000* students.[6] While the University acknowledges the survey was not compulsory for the entire student body, it was provided to all incoming students as a condition of them being permitted to register for classes.[7] If UK cannot rely on the survey safe harbor provided by the guidance *Plaintiff* herself relies on, then what good is the safe harbor at all?

### B. Plaintiff fails to state an Equal Protection Clause claim.

Although the Equal Protection Clause prohibits the University from engaging in sex discrimination, the Equal Protection Clause does not require the University to adhere to the Department of Education's Interpretation of the 1975 Regulation. Therefore, Plaintiff has failed to state a 42 U.S.C. § 1983 claim. Accordingly, her Amended Complaint must be dismissed for failure to state a claim.[8]

### IV. The Eleventh Amendment and sovereign immunity bar Plaintiff's claims under 42 U.S.C. § 1983.

If this Court determines that the Plaintiff states a 42 U.S.C. § 1983 claim, then sovereign immunity bars the claim against the University as well as President Capilouto and Director Barnhart.[9]

---

[6] UK submitted data and methodology for the survey, supported by authenticating affidavits, which the court can consider under Fed.R.Civ.P 56. *See also* Fed.R.Civ.P. 12(d).

[7] Plaintiff, after having argued the survey was not given to the entire student body and criticizing it on that ground, then argues the survey is flawed because its results regarding certain current varsity teams such as football and men's soccer show less interest than the current number of participants on those teams. Plaintiff's Response (D.E. 16) at 25-26. Of course, the University is well aware there is sufficient interest and ability to field a football team and men's soccer team, as those teams have significant histories at the University. As Plaintiff acknowledges, in just the 12,000 student sample, there were 58 assertions of objective ability and 48 assertions of willingness to accept governing body restrictions for football. For lacrosse, on the other hand, there was *one* assertion of objective ability and there were *zero* assertions of willingness to accept governing body restrictions.

[8] In the event this Court concludes Plaintiff has stated a claim under Title IX or the Equal Protection Clause, the University asks this Court to certify the issue for immediate interlocutory appeal under 28 U.S.C. § 1292(b).

[9] Sovereign immunity bars both the damages claims and any claim for injunctive relief under 42 U.S.C. § 1983. Of course, the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), allows a federal court to enjoin an on-going violation of federal law. Thus, if this court concluded that the University was violating a federal statute, it could enjoin the

### a. Sovereign immunity bars Plaintiff's § 1983 claims against the University in their entirety.

Plaintiff argues the binding Sixth Circuit precedent cited by the University is not applicable because those cases "were brought without tandem Title IX gender equity claims." Plaintiff's Response (D.E. 11) at 26. This argument fundamentally misunderstands Supreme Court opinions regarding the States' sovereign immunity. In other words, Plaintiff asserts because she brought a statutory Title IX claim *in addition to* her constitutional claims, her 42 U.S.C. § 1983 claim can proceed against the University. Plaintiff is mistaken.

To be sure, Congress attempted to abrogate state sovereign immunity for certain statutory claims under Title IX.[10] On the other hand, the Supreme Court has made clear that the States are not "persons" for purposes of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Plaintiff cites *no* authority to support the conclusion that if a plaintiff brings one statutory claim that is not barred by the Eleventh Amendment, then other claims in the suit that are barred may go forward.[11] Such a holding would both gut sovereign immunity and directly

---

University from doing so. However, the *Ex parte Young* doctrine does not extend to an agency's unreasonable Interpretations of its Regulations.

[10] In *Franks v. Kentucky School for the Deaf*, 142 F.3d 360, 362-63 (6th Cir. 1998), the Sixth Circuit held that Congress had validly abrogated the States' sovereign immunity for Title IX claims. However, more recent Supreme Court decisions cast doubt on the continued validity of that holding. *See, e.g.*, *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 43 (2012) ("Subjecting States to suits for damages pursuant to § 5 requires more than a theory for why abrogating the States' immunity aids in, or advances, a stated congressional purpose. To abrogate the States' immunity from suits for damages under § 5, Congress must identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations."); Id. at 45 (Scalia, J., concurring) (Court should "adopt an approach that is properly tied to the text of § 5, which grants Congress the power "to *enforce,* by appropriate legislation," the other provisions of the Fourteenth Amendment. As I have explained in greater detail elsewhere, outside of the context of racial discrimination (which is different for *stare decisis* reasons), I would limit Congress's § 5 power to the regulation of conduct that *itself* violates the Fourteenth Amendment."); *U.S. v. Georgia*, 546 U.S. 151 (2006) (Congress had power in Title II of the ADA to abrogate state sovereign immunity only to the extent the conduct at issue violated the Fourteenth Amendment). Even if *Franks* is still correct, the abrogation is limited to violations of the statute and does not extend to claims based on the Department of Education's interpretation of regulations.

[11] Additionally, Plaintiff's Title IX claims can only be against the University because there is no individual liability for a private cause of action under Title IX.

contradict *Will*. In fact, doing so would allow a plaintiff to waive a defendant's immunity simply by adding a claim.

*Johnson v. University of Cincinnati* is illustrative. In *Johnson*, the Court allowed Plaintiff's statutory Title VII claim against a state University to go forward, concluding it was not barred by sovereign immunity. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000). However, the Court upheld the district court's dismissal of the plaintiff's §§ 1981 and 1983 claims. *Id.* Like in *Johnson*, the Court must examine whether *each* substantive cause of action Plaintiff alleges is barred by sovereign immunity. Plaintiff cannot circumvent sovereign immunity and the *Will* doctrine simply by bootstrapping a § 1983 claim to her Title IX claims.

Indeed, this Court has repeatedly and routinely held that the Eleventh Amendment bars § 1983 claims against the University. *See, e.g.*, *McGinnis v. Central Kentucky Management Services*, 2019 WL 5190887, at *5-6 (E.D. Ky. Oct. 15, 2019) (Wier, J.) (recognizing under "§ 1983, the University [of Kentucky], as an arm of the state, is immune from suit under the Eleventh Amendment") (internal quotation marks omitted). *Shepherd v. Univ. of Kentucky*, 2016 WL 4059559, at *2 (E.D. Ky. Jul. 28, 2016) (Hood, J.); *Coyle v. University of Kentucky*, 2 F. Supp. 3d 1014 (E.D. Ky. 2014) (Caldwell, J.) (holding sovereign immunity barred claims against the University of Kentucky because Copyright Remedy Clarification Act did not validly abrogate state sovereign immunity).

### b. Because there are no individual capacity claims, Plaintiff's § 1983 claims for damages against Mitch Barnhart and Eli Capilouto must be dismissed.

In the Amended Compliant, Plaintiff contended "each of the individual Defendants is individually liable for the discriminatory actions." Amended Complaint (D.E. 8) ¶ 128. Interpreting this language as potentially seeking to sue President Capilouto and Director Barnhart in both their official and individual capacities, Defendants' motion to dismiss addressed the

individual capacity claims. Defendants' Motion to Dismiss (D.E. 11) at 34-35. However, Plaintiff's response to Defendants' motion to dismiss expressly clarified Plaintiff is suing Barnhart and Capilouto only in their official capacities. Plaintiffs Response (D.E. 16) at 29-31 (Plaintiffs will voluntarily dismiss the Board of Trustees as a Defendant and litigate claims against *Athletic Director* Barnhart and *President* Capilouto in their official capacities, not their personal capacities."). Plaintiff contemporaneously filed a notice of voluntary dismissal, dismissing Plaintiff's claims against the Board of Trustees. (D.E. 17). Now that Plaintiff has dismissed the Board of Trustees and clarified she has asserted only official capacity claims against Barnhart and Capilouto, it is legally impossible for her to maintain an official capacity § 1983 claim for money damages. As the Supreme Court has made clear, and as addressed in full in Defendants' principal brief, neither the University nor President Capilouto and Director Barnhart in their official capacities are a "person" subject to liability under § 1983 because suit against a state official in his or her official capacity is the same as suit against the state entity itself.[12] *See* (D.E. 11) at 33. Therefore, the Court must dismiss any official capacity claims for damages.[13]

### V. The Court may consider Defendants' motion to dismiss as a motion for summary judgment.

Plaintiff asserts any evidence attached by the University should be stricken by the Court and "Defendants' invitation to the Court to sua sponte consider their 12(b)(6) motion as a motion for summary judgment should not be given any credence." Plaintiff's Response (D.E. 16) at 7.

---

[12] *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

[13] While there is a limited exception to sovereign immunity for state officials sued in their official capacities recognized under *Ex parte Young*, that exception extends *only* to claims for prospective injunctive relief; *Ex Parte Young* does not extend to claims for money damages. Therefore, Plaintiffs claims against the University officials in their official capacities can be brought—if at all—*only* for prospective injunctive relief under *Ex parte Young*.[13]

In support of this argument Plaintiff cites to a single case from the Court of Appeals for the D.C. Circuit from 1946, *Farrall v. D.C. Amateur Athletic Union*, 153 F.2d 647, 648 (D.C. Cir. 1946). This argument ignores the plain language of the Federal Rules of Civil Procedure and Sixth Circuit precedent. Rule 12(d) provides in relevant part "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, *the motion must be treated as one for summary judgment under Rule 56*." Fed.R.Civ.P. 12(d) (emphasis added); *see also*, *e.g.*, *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) ("If a court does consider material outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56 . . ."); *Briggs v. Ohio Elections Com'n*, 61 F.3d 487, 493 (6th Cir. 1995) ("On a motion to dismiss under Rule 12(b)(6), the court may consider matters outside the pleading. However, the motion shall [then] be treated as one for summary judgment and disposed of as provided in Rule 56. . .") (internal quotation marks omitted).

Under the plain language of the rule and supporting Sixth Circuit precedent, the Court can and should consider the exhibits to the motion because they represent the type of evidence the Court can consider on a motion for summary judgment. Further, Plaintiff has not contended that she lacks a reasonable opportunity to present her own material pertinent to the motion; rather, she contends only that there are factual disputes regarding the evidence the University attached. As a result, consideration of this evidence is appropriate at this stage of the proceedings.

## CONCLUSION

For these reasons, as well as those in the University's principal brief (D.E. 11), Plaintiff's claims against the University, Mitch Barnhart and Eli Capilouto in their official capacities, and to

the extent Plaintiff alleged individual capacity claims, any individual capacity claims against Barnhart and Capilouto, should be dismissed in their entirety, with prejudice.

        Respectfully submitted,

        STURGILL, TURNER, BARKER & MOLONEY, PLLC

        /s/ *Bryan H. Beauman*
        Bryan H. Beauman
        Donald C. Morgan
        333 W. Vine Street, Suite 1500
        Lexington, KY 40507
        Telephone: (859) 255-8581
        bbeauman@sturgillturner.com
        dmorgan@sturgillturner.com

        &

        William E. Thro
        General Counsel
        University of Kentucky
        301 Main Building
        Lexington, Kentucky 40506
        Telephone: (859) 257-2936
        William.Thro@uky.edu
        COUNSEL FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 24th day of January, 2020 the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF eFiling system, which will send a notice of electronic filing to the following counsel of record:

| | |
|---|---|
| Jill Zwagerman AT0000324 | Barbara Bonar |
| Beatriz Mate-Kodjo AT0012331 | Sophia Stevenson |
| Lori Bullock AT0012240 | 3611 Decoursey Avenue |
| 521 E. Locust Street, Suite 300 | Covington, KY 41015 |
| Des Moines, IA 50309 | Telephone: 859-431-3333 |
| Telephone: 515-883-2000 | bdbonar@lawatbdb.com |
| jzwagerman@newkirklaw.com | lbullock@newkirklaw.com |
| bmate-kodjo@newkirklaw.com | COUNSEL FOR PLAINTIFFS |
| lbullock@newkirklaw.com | |

                                              /s/ *Bryan H. Beauman*
                                              COUNSEL FOR DEFENDANTS

\01223412.docx