**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

| | |
|---|---|
| **ELIZABETH NIBLOCK, individually and on behalf of those similarly situated,** | **CIVIL ACTION NO. 5:19-394-KKC** |
| Plaintiffs, | |
| V. | **OPINION AND ORDER** |
| **UNIVERSITY OF KENTUCKY, BOARD OF TRUSTEES, MITCH BARNHART, in his official capacity, and ELI CAPILOUTO, in his official capacity** | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the defendants' motion to dismiss (DE 11). For the following reasons, the motion will be granted in part and denied in part.

**I. Background**

Unless noted otherwise, the facts set forth in this opinion are taken from the factual allegations of the plaintiffs' complaint. As it must on a motion to dismiss, the Court has assumed that all the allegations are true. *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

Plaintiff Elizabeth Niblock is a senior at the University of Kentucky, which is an NCAA Division I school. Niblock transferred to UK in 2017 from another Division I institution, which recruited her to play on the women's lacrosse team. She played on the lacrosse team at the prior institution, but she transferred to UK because it was closer to home and she wanted the bigger school atmosphere. Niblock also played competitive field hockey in high school. She would join

a varsity lacrosse or field hockey team at UK if one were offered, but UK does not offer a women's varsity team in either sport.

She asserts that UK discriminates against female students on the basis of sex by providing them fewer and poorer opportunities in sports than male students. (DE 8, Complaint at 1.) She asserts four claims against the defendants. Three of those claims are based on Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*. (DE 8, Complaint, ¶ 6 & Counts I-III.)

With certain inapplicable exceptions, that statute prohibits any education program or activity that receives federal financial assistance from, on the basis of sex, excluding any person from participation in the program or activity, denying any person the benefits of the program or activity, or subjecting any person to discrimination under the program or activity. 20 U.S.C. § 1681(a). Niblock asserts that UK needs to add approximately 183 female varsity sports positions to comply with Title IX.

There is no dispute that UK receives federal financial assistance and, thus, must comply with Title IX. Niblock asserts that UK is violating Title IX by the following conduct:

1) failing to provide female and male students equal athletic participation opportunities (DE 8, Complaint, Count I);

2) failing to provide female and male students an equal allocation of athletic financial assistance (DE 8, Complaint, Count II); and

3) failing to provide female and male students with "equal athletic benefits." (DE 8, Complaint, Count III.)

Niblock's fourth claim is that, by failing to provide enough opportunities for women to play on varsity sports teams, the defendants have violated the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, as enforced through 42 U.S.C. § 1983. (DE 8, Complaint, Count IV.) For this claim, Niblock alleges that UK fails to provide female students with "equal

athletic participation opportunities" and with "equal financial assistance." (DE 8, Complaint, ¶ 125.)

As for the remedy that Niblock seeks, she requests:

1) an injunction that would compel the defendants to "provide equal athletic participation and scholarship opportunities for female students by establishing varsity opportunities for women at UK sufficient to eliminate the gender disparities in athletic opportunities and that reflect [the] interest and ability of female student athletes in field hockey, lacrosse, and/or other sports." (DE 8, Complaint, ¶ 131; Prayer for Relief);

2) recovery of the attorneys' fees and expenses incurred in prosecuting this action under 42 U.S.C. § 1988 (DE 8, Complaint, ¶ 135, Prayer for Relief);

3) a declaration that defendants have violated and continue to violate Title IX and the Equal Protection Clause. (DE 8, Complaint, Prayer for Relief); and

4) compensatory damages. (DE 8, Complaint, Prayer for Relief.)

In her complaint, Niblock named four defendants: UK; the UK Board of Trustees; Mitch Barnhart, UK athletic director; and Eli Capilouto, UK president. Niblock later voluntarily dismissed the Board of Trustees. (DE 20, Order.) In response to the motion to dismiss, Niblock clarifies that she asserts claims against Barnhart and Capilouto in their official capacities only, not in their individual capacities. (DE 16, Response at 29.)[1]

---

[1] Because Niblock asserts no claims against any defendant in his individual capacity, the parties' arguments about whether any defendant is entitled to qualified immunity on Niblock's Equal Protection claim under 42 U.S.C. § 1983 are irrelevant. "[Q]ualified immunity [is] a defense available only to individual government officials sued in their personal capacity." *United Pet Supply, Inc. v. Chattanooga*, 768 F.3d 464, 484 (6th Cir. 2014). It is for this defense that the issue of whether an asserted constitutional right is "clearly established" is significant. This is because the qualified immunity doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Goodwin v. City of Painesville*, 781 F.3dun 314, 320–21 (6th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

The three remaining defendants – UK and Barnhart and Capilouto in their official capacities – move to dismiss each claim against them.

## II. Analysis

### A. Title IX Claims

In her complaint, Niblock asserts the Title IX claims against only UK and the now-dismissed Board of Trustees. (DE 8, Complaint, Counts I, II, III.) Sovereign immunity is abrogated for Title IX claims against the university. *Franks v. Kentucky Sch. for the Deaf,* 142 F.3d 360, 363 (6th Cir. 1998). In *Franks*, the Sixth Circuit explicitly stated, "Therefore, since Congress made its intention to abrogate the states' Title IX immunity unmistakably clear, and it had the authority to do so pursuant to Section 5 of the Fourteenth Amendment, we hold that Congress successfully abrogated the states' Eleventh Amendment immunity from Title IX lawsuits." *Id*. UK argues in a footnote in its reply brief that Supreme Court decisions have "cast doubt on the continued validity" of *Franks*. (DE 22, Reply at 9 n.10 ). To the extent that this can be deemed to constitute an argument that the Court should ignore *Franks*, it is insufficient. "Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority." *Eulitt v. Me. Dep't of Educ*., 386 F.3d 344, 349 (1st Cir. 2004).

Niblock can assert claims under Title IX for damages and injunctive relief against the university. *Fitzgerald v. Barnstable Sch. Comm*., 555 U.S. 246, 255 (2009) ("In a suit brought pursuant to this private right, both injunctive relief and damages are available."); *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 76 (1992) ("In sum, we conclude that a damages remedy is available for an action brought to enforce Title IX.")

4

UK argues that sovereign immunity prohibits Niblock from asserting a claim for damages that is based on violations of "the Department of Education's interpretation of a regulation." (DE 11, Mem. at 35.) The Court need not address this argument because, as will be discussed further below, Niblock asserts claims for violations of Title IX and its implementing regulations, not claims for violations of the Department of Education's interpretation of those regulations.

### 1) Title IX – Unequal Athletic Participation Opportunity (Count I)

In Count I, Niblock asserts that UK violates Title IX by "failing to provide female students an equitable opportunity to participate in varsity intercollegiate athletics." (DE 8, Complaint, Count I (alleging "Unequal Athletic Participation"), ¶ 99.) Niblock argues that UK has a duty to provide male and females with equal opportunities to participate in varsity intercollegiate athletics under both Title IX and 34 C.F.R. § 106.41. (DE 8, Complaint, ¶ 99.) That regulation addresses Title IX's requirements for athletic programs. It prohibits universities from, on the basis of sex, excluding any person from "participation in" or denying any person "the benefits of" any interscholastic, intercollegiate, club or intramural athletics offered by the university and also prohibits universities from treating any person "differently from another person" or otherwise discriminating against any person in those athletic activities. 34 C.F.R. § 106.41(a).

The regulation further provides that a university "shall provide equal athletic opportunity for members of both sexes."  34 C.F.R. § 106.41(c). The regulations implementing Title IX, are administratively enforced by the Department of Education's Office of Civil Rights ("OCR"). Section 106.41(c) lists ten factors that the OCR will consider in determining whether a university complies with it. The first of the non-exclusive list of factors is "[w]hether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes." 34 C.F.R. § 106.41(c)(1).

UK argues that "*nothing* in the regulatory text suggests this factor is determinative of compliance or this factor is more important than the other nine factors." (DE 11, Mem. at 2.) It argues that the "regulatory text requires consideration of all ten factors." (DE 11, Mem. at 2.) The Sixth Circuit has determined, however, that "[a]n institution 'may violate Title IX simply by failing to accommodate effectively the interests and abilities of student athletes of both sexes'" in violation of the first factor listed in 34 C.F.R. § 106.41(c)(1). *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 273 (6th Cir. 1994) (quoting *Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824, 828 (10th Cir. 1993)).

In 1979, the OCR issued a policy interpretation of Title IX and its implementing regulations to provide guidance to universities on how to comply with Title IX in intercollegiate athletic programs. 44 Fed. Reg. 71413 (Dec. 11, 1979). As to a university's obligation to meet the "interest and abilities" of students, the 1979 policy interpretation provides that "[c]ompliance will be assessed in one of the following ways:"

1) Whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments; or

2) Where the members of one sex have been and are underrepresented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or

3) Where the members of one sex are underrepresented among intercollegiate athletes, and the institution cannot show a continuing practice of program expansion such as that cited above, whether it can be demonstrated that the interests and abilities of the members of that sex have been fully and effectively accommodated by the present program.

44 Fed. Reg. 71413, 71418 (Dec. 11, 1979).

Niblock asserts that UK does not comply with any of the prongs of the three-prong test. She asserts that:

> 1) the ratio of female to male athletes at UK is not substantially proportionate to the overall ratio of female to male undergraduate students at [UK];
>
> 2) UK does not have a history or continuing practice of athletic program expansion for women;
>
> 3) UK has failed to fully and effectively accommodate the athletic interests and abilities of its female students by, among other things, [] refusing to add additional sports where there is interest.

(DE 8, Complaint, ¶ 100.)

In its motion to dismiss, UK makes several arguments regarding Count I. First, it argues that the Court should no longer apply the OCR's 1979 policy interpretation of Title IX and its implementing regulations. For this argument, the university cites *Kisor v. Wilke*, 139 S.Ct. 2400 (2019), which UK argues changed the rules for when a court should defer to an agency's interpretation of its own regulations. (DE 11, Mem. at 4.) UK argues that *Kisor* precludes the Court from deferring to the 1979 policy interpretation of the Title IX regulations. (DE 11, Mem. at 10.)

Second, UK argues that, even if *Kisor* required deference to the OCR's policy interpretation, pursuant to *Alexander v. Sandoval*, 532 U.S. 275 (2001), Niblock has no right to bring an action to enforce the 1979 policy interpretation. (DE 11, Mem. at 10.) The university argues that, under *Sandoval*, Niblock has a private right of action to enforce the statute and those regulations consistent with the statute, but that she has no private right of action to enforce the 1979 policy interpretation. (DE 11, Mem. at 21.)

For purposes of this motion, the Court will assume that UK is correct in both of these arguments – that *Kisor* precludes the Court from applying the 1979 policy interpretation in assessing Count I and that *Sandoval* prohibits Niblock from asserting a claim under the 1979 policy interpretation.

7

Neither of these positions requires that Count I be dismissed for failure to state a claim under Rule 12(b)(6).

As to *Sandoval*, with Count I, Niblock asserts that UK is violating Title IX and its implementing regulation 34 C.F.R. § 106.41(c) by failing to "provide equal athletic opportunity for members of both sexes." Niblock does not assert a claim under the 1979 policy interpretation. Instead, she asserts that the 1979 policy interpretation is the method that the Court should employ to assess Count I. In its motion, UK does not argue that *Sandoval* prohibits Niblock from asserting a claim under Title I or 34 C.F.R. § 106.41(c). Nor does UK dispute that the statute and regulation require that UK "provide equal athletic opportunity for members of both sexes."

As to *Kisor*, even if the Court is precluded from employing the three-prong test in the 1979 policy interpretation to assess Count I, that does not mean that the claim must be dismissed. It simply means that the Court should assess the claim in some way different than the 1979 policy interpretation indicates. UK does not proffer an alternative method for assessing the claim. Nor does it argue that Count I must be dismissed as a matter of law under any alternative assessment.

With Count I, Niblock argues that UK has a duty to provide male and female students with equal opportunities to participate in varsity intercollegiate athletics under both Title IX and 34 C.F.R. § 106.41(c). (DE 8, Complaint, ¶ 99.) Niblock argues that UK has failed to comply with that duty because 1) females make up about 60 percent of UK's enrollment but "its athletic female participation rate is only about 44%" (DE 8, Complaint, § 101); 2) UK "has not added any new female varsity sports in over 10 years" (DE 8, Complaint, § 102.); and 3) Niblock and other proposed plaintiffs "have the interest and ability to participate in women's varsity field hockey and lacrosse," but UK has failed to add these sports. (DE 8, Complaint, § 103).

Niblock alleges that, in the most recent publicly available report that UK filed with the Department of Education, UK reported that, during the 2017-18 academic year, women comprised approximately 55 percent of the student population but only 41 percent of the participants of intercollegiate varsity teams at UK. (DE 8, Complaint, ¶ 49.) She alleges that several women's sports club teams – including field hockey, lacrosse, triathlon, and equestrian – have expressed interest in obtaining varsity status, but UK has failed to adequately respond to them or has denied their varsity applications. (DE 8, Complaint, ¶ 52.)

It is true that, in Count I of the complaint, Niblock sets forth the three-prong test of the 1979 policy interpretation and many of her factual assertions track that test. But leaving aside the policy interpretation, UK does not argue that the facts that Niblock asserts, if proved, cannot, as a matter of law, establish a violation of Title IX and 34 C.F.R. § 106.41(c).

Even if the Court is precluded from applying the 1979 policy interpretation in assessing Count I, that is no basis for dismissing the claim. UK does not make the necessary second step of the argument: that if the Court does not apply the 1979 policy interpretation, the Court must apply an alternative assessment that requires dismissal of the claim as a matter of law. The question on a motion to dismiss is whether the plaintiff has pleaded sufficient facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). While UK argues about how the Court should assess Count I, it does not address the issue of whether the facts set forth by Niblock, if taken as true, state a plausible claim under Title IX.

For its third argument in support of dismissing Count I, UK argues that, even if the Court applies the OCR's 1979 policy interpretation, UK complies with it. In support of this argument, UK points to a survey that it conducted in the spring of 2018, which was completed by 12,009 undergraduate students. The university argues that the survey demonstrates that UK "fully and

9

effectively" accommodates the "interests and abilities" of its female students in intercollegiate athletics as provided for in the third prong of the three-prong test.

The Court, however, cannot consider evidence like the survey on a motion to dismiss. Generally, matters outside the pleadings may not be considered by a district court when ruling on a 12(b)(6) motion to dismiss without converting the motion into one for summary judgment. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), overruled on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). The items that the Court may consider outside the pleadings on a motion to dismiss are "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997)). In addition, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id*. (citation omitted).

The 2018 survey that UK asks the Court to consider on this motion does not fall into any of these categories. Citing Federal Rule of Civil Procedure 12(d), UK argues that the Court can consider the survey if it converts this motion into a motion for summary judgment. UK submits "data and methodology for the survey" and "authenticating affidavits," which it argues that the Court can consider after converting the motion to one for summary judgment. (DE 22, Reply at 8 n.6.) Before doing so, however, the Court must give both parties a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

UK complains that, if it cannot rely on the "survey safe harbor" provided in prong three of the three-prong test, "then what good is the safe harbor at all?" (DE 22, Reply at 8.) The Court is not ruling in this opinion that UK cannot rely on the safe harbor if it chooses to. The Court merely

10

finds that assessing compliance with prong three as UK requests requires a consideration of "evidence," which is not something the Court can do on a motion to dismiss.

UK also argues that Count I must be dismissed because, while Niblock has alleged that 20-22 members of the club lacrosse team have sufficient interest and ability to compete in a varsity sport, she has failed to plead that they "would be willing to accept the additional time requirements and governing body restrictions necessary to play a NCAA Division I varsity sport." (DE 22, Reply at 7.) UK cites no authority that requires this allegation be made to successfully plead a Title IX claim.

Regardless, Niblock alleges that she and other proposed plaintiffs are "women and current students at UK"; that they are all "highly skilled athletes who have participated in Division I athletics at other institutions or participate in club sports at UK"; and that all "desire to participate in sports at the varsity level." She alleges that, from 2018 to present, female lacrosse and field hockey players have requested that UK offer varsity teams in these sports, but UK has rejected these requests. (DE 8, Complaint, ¶¶ 64, 73.) These are sufficient allegations of interest in and ability to play sports at the varsity level, to the extent that such allegations are necessary to state a claim under Title IX.

    2) **Title IX – Unequal Financial Assistance (Count II)**

The regulations implementing Title IX provide that, with certain inapplicable exceptions, a university must not, "[o]n the basis of sex, provide different amount or types of [financial] assistance, limit eligibility for such assistance which is of any particular type or source, apply different criteria, or otherwise discriminate." 34 C.F.R. § 106.37(a)(1). In Count II, Niblock alleges that UK violates the regulation by failing "to provide female student athletes with an equal allocation of athletic financial assistance." (DE 8, Complaint, ¶ 110.)

UK asserts that this claim must be dismissed because Niblock has not made sufficient factual allegations to support the claim. Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of a claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). In order to survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id*. at 570.

While Niblock devotes only six paragraphs of her 135-paragraph complaint explicitly to Count II, the first of those paragraphs refers to the previous allegations of the complaint. Thus, the Court interprets the complaint to assert that UK 's alleged failure to provide sufficient financial assistance to female student athletes is rooted in its alleged failure to provide enough opportunities for females to participate in varsity sports. In other words, because UK allegedly offers a deficient number of female varsity positions, it necessarily offers females a deficient amount of financial assistance that such players normally receive, like scholarships. This view is supported by Niblock's assertion in her response brief that, if she prevails on Count I, "the scholarship and benefits corresponding with [varsity participation] opportunities will necessarily form part of the relief for Plaintiffs." (DE 16, Response at 11, n.5.)

These are sufficient allegations of unequal financial assistance to at least withstand a motion to dismiss.

### 3) Title IX – Unequal allocation of Athletic Treatment and Benefits (Count III)

As discussed, 34 C.F.R. § 106.41(c) broadly requires that universities provide "equal athletic opportunity" for male and female athletes. The regulation further provides that, in determining whether a university provides equal athletic opportunity, the OCR will consider, among other factors: the provision of equipment and supplies; scheduling of games and practice time; travel and per diem allowance; opportunity to receive coaching and academic tutoring; assignment and compensation of coaches and tutors; the provision of locker rooms, practice, and competitive facilities; the provision of medical and training facilities and services; the provision of housing and dining facilities and services; and publicity. 34 C.F.R. § 106.41(c).

With Count III, Niblock asserts that UK has violated Title IX by failing to provide female student athletes with an equal allocation of these benefits. (DE 8, Complaint, ¶ 116.) She asserts that "each female athlete now receives fewer or worse benefits than the males are receiving." (DE 8, Complaint, ¶ 118.)

As with Count II, UK again argues that Niblock has failed to make sufficient factual allegations to support this claim. Also as with Count II, however, Niblock begins Count III by referencing the prior allegations of the complaint. Thus, the Court interprets Count III to be rooted in Niblock's assertion that UK does not provide females with an equal opportunity to participate in varsity athletics. In other words, her assertion is that, because UK does not offer females equal opportunity to play varsity positions, it necessarily also fails to offer female students an equal amount of the treatment and benefits that are provided to varsity athletes.

As with Count II, the allegations set forth in support of Count III are at least sufficient to withstand a motion to dismiss.

If no amendments are made to the complaint, the interpretation of Count II and III set forth in this opinion will be the only interpretation permitted by the Court in this litigation. Under this interpretation, if Count I should fail, Counts II and III will likewise fail

### B. Equal Protection Claim (Count IV)

Niblock asserts an Equal Protection claim against UK and Barnhart and Capilouto in their official capacities. The Equal Protection Clause of the 14th Amendment to the United States Constitution prohibits any state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

As she must, Niblock asserts this claim under 42 U.S.C. § 1983, which provides "the exclusive remedy for the alleged constitutional violations" by state actors. *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir.1987), vacated and remanded on other grounds, 488 U.S. 1036 (1989). That statute provides for a private right of action against any "person" acting under color of state law who deprives the plaintiff of a right secured by the Constitution or federal law. *Hardin v. Straub*, 954 F.2d 1193, 1198 (6th Cir. 1992); 42 U.S.C. § 1983.

The Supreme Court has held that § 1983 does not allow claims directly against a state. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (affirming "that a State is not a person within the meaning of § 1983"). The University of Kentucky is considered an arm of the state. *Hutsell v. Sayre*, 5 F.3d 996, 1000 (6th Cir. 1993). "[T]he University, as an arm of the State, is immune from suit under the Eleventh Amendment because it is well-settled that a plaintiff is precluded from directly suing a State in federal court on [§ 1983] claims." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000). Accordingly, Niblock's § 1983 claim against UK must be dismissed.

"[T]he Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities." *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). Accordingly, any claim under § 1983 for damages against Barnhart and Capilouto in their official capacities must be dismissed.

In contrast, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Thus, Niblock may assert a § 1983 claim against Capilouto and Barnhart in their official capacities for prospective injunctive relief.

UK argues that this claim must be dismissed because Niblock does not plead sufficient facts to state a claim that UK has treated her differently than males because of her sex. (DE 11, Mem. at 31.) UK argues that Niblock alleges only that UK has failed to offer varsity teams in women's lacrosse and field hockey. It argues that UK has not elevated the male lacrosse team to varsity status either and that UK does not offer a male field hockey team at all. Thus, UK argues, it cannot be deemed to treat female field hockey and lacrosse athletes different than their male counterparts. It does not provide a field hockey or lacrosse varsity team to either sex. Nor does it provide scholarships in these sports to anyone.

Niblock alleges, however, that UK violates the Equal Protection Clause by failing to provide female students with "equal athletic participation opportunities" and failing to provide them with "equal athletic financial assistance" in its athletic program as a whole. (DE 8, Complaint, ¶ 125.) Her claim is that the UK athletic program, as a whole, fails to offer female student athletes with an opportunity to participate in varsity sports and to receive financial assistance that is equal to

15

that offered to their male counterparts. Whether or not these allegations are ultimately successful, they are at least sufficient to state a claim under the Equal Protection Clause.

UK also argues that its practice of offering "slightly more opportunities to one sex" does not violate the Equal Protection Clause because there is a "reasonable relationship" between the athletic participation opportunities it offers and the demand for them. (DE 11, Mem. at 32.) For this argument, however, the Court assumes that UK is relying again on the 2018 survey. As explained, the Court cannot consider that survey on a motion to dismiss.

### C. Class allegations

Niblock purports to assert claims on her own behalf and on behalf of a proposed class of all "present, prospective, and future female students at UK who want to participate in the eliminated varsity sports of field hockey or who want to participate in other varsity sports not offered to women by UK" and "those female student athletes who are deterred from enrolling at UK because it does not offer women athletic opportunities as required by Title IX." (DE 8, Complaint, ¶ 36.)

UK argues that many members of the proposed class do not have standing to pursue this action because they 1) will never attend UK; 2) "have no interest in making the sacrifices necessary to play varsity sports" for UK; or 3) "lack the objective ability to play at the NCAA Division I level." (DE 11, Mem. at 21.) UK does not dispute that Niblock, herself, has standing to pursue her claims. (DE 11, Mem. at 21-23.) The Court will resolve the standing of the other members of the proposed class when and if it is asked to certify a class.

### III. Conclusion

With this opinion, the Court does not find that Niblock will ultimately prevail on either her Title IX or Equal Protection claim. The Court merely finds that Niblock's claims are not so insufficient that they must be dismissed in their entirety at this early stage of litigation.

For all these reasons, the Court hereby ORDERS that the defendants' motion to dismiss (DE 11) is GRANTED in part and DENIED in part as follows:

1) the motion is GRANTED as to Niblock's Equal Protection claim under 42 U.S.C. § 1983 against UK and that claim is DISMISSED;

2) the motion is GRANTED as to Niblock's claim for money damages on her Equal Protection claim under 42 U.S.C. § 1983 against defendants Capilouto and Barnhart in their official capacities and that claim is DISMISSED; and

3) the motion is otherwise DENIED.

Dated November 30, 2020

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY