UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| ELIZABETH NIBLOCK and ALA HASSAN, Individually and on behalf of those similarly situated, | CIVIL ACTION NO. 5:19-394-KKC |
| Plaintiffs, | |
| v. | **OPINION & ORDER** |
| UNIVERSITY OF KENTUCKY, MITCH BARNHART, and ELI CAPILOUTO in their official capacities, | |
| Defendants. | |

*** *** ***

This matter is before the Court on the defendants' motion to exclude the testimony of the plaintiffs' expert witness Dr. Donna Lopiano. (DE 92). Following the parties' full briefing and the Court's *Daubert* hearing on the matter, the motion is ripe for review. For the following reasons, the Court will GRANT the motion.

## I. Background and Legal Standard

In this action, the class plaintiffs assert Title IX claims against the University of Kentucky, Athletic Director Mitch Barnhart, and President Eli Capilouto (collectively "UK"). 20 U.S.C. § 1681, *et seq*. The thrust of the complaint is that UK's current varsity sports offerings do not fully and effectively accommodate the interest and ability of its female students. The matter is set for a bench trial on August 7, 2023.

The plaintiffs have offered Dr. Donna Lopiano as an expert witness to testify regarding UK's athletic offerings as they relate to Title IX. UK seeks to exclude Lopiano's testimony, on grounds that Lopiano's testimony amounts to impermissible legal conclusions on the ultimate issue

1

in this case: whether UK is in compliance with Title IX. The plaintiffs submit that they have no intention of offering testimony about this ultimate issue, noting that consideration rests solely with the trier of fact. The University counters that the plaintiffs are framing Lopiano's proposed testimony incorrectly. UK also moves to exclude other portions of Lopiano's proffered testimony on qualification and reliability grounds. The Court conducted a *Daubert* hearing on April 24, 2023.

For a proposed expert witness to survive a motion to exclude (1) the witness must be qualified by knowledge, skill, experience, training, or education; (2) the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) the testimony must be reliable. *United States v. Simpson*, 845 F. App'x 403, 409 (6th Cir. 2021) (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008)).

The court has broad discretion in determining whether to admit expert testimony, and "[t]his discretion is particularly broad in a bench trial." *United States v. Demjanjuk*, 367 F.3d 623, 633 (6th Cir. 2004). Though the "usual concerns" about shielding a jury from unreliable expert testimony are not present in a bench trial, the Court must not allow expert testimony that fails to meet *Daubert* standards. *Kentucky Waterways All. v. Kentucky Utilities Co.*, 539 F. Supp. 3d 696, 710 (E.D. Ky. 2021) (citing *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 635 (6th Cir. 2000)) ("The Court is still required to rely only on admissible and reliable expert testimony, even while conducting a bench trial."); *see also Douglas v. United States*, No. CIV. 10-26-ART, 2011 WL 2633612, at *6 (E.D. Ky. July 5, 2011) (noting that experts must always pass *Daubert* scrutiny before the Court may rely on their testimony); *Robert B. Miller & Assocs., Inc. v. Am. Com. Lines LLC*, No. 5:09-CV-217, 2011 WL 3714777, at *2 (W.D. Ky. Aug. 23, 2011) ("The Court is still required, however, to consider only admissible and reliable expert testimony.").

## II. UK's motion to exclude

UK argues that all of Lopiano's proposed opinions should be excluded on the basis that they constitute impermissible legal conclusions—an argument that goes to the opinions' ultimate relevancy. UK further argues that any opinions that are not legal conclusions are otherwise inadmissible for various reasons, including Lopiano's qualifications and the reliability of some of her opinions.

Based on her report prepared for the litigation and the testimony provided at the *Daubert* hearing, it appears that Lopiano would opine on five basic questions:

1. Whether, based on available participation data generated by the University of Kentucky ("UK") athletic department and other documents reviewed for this case, the intercollegiate athletic program has in the past and is currently accommodating the interests and abilities of female students under Prongs One, Two or Three of Title IX's participation options.

2. If the UK athletic program is not meeting the Prong One proportionality participation option, whether UK has regularly and properly assessed the interests and abilities of the underrepresented sex for the purpose of identifying unmet interests and abilities.

3. Whether the past, current, or proposed future UK athletic program selection of sports for male and female athletes equally accommodates the respective interests and abilities of male and female athletes.

4. Whether UK's payment for scholarships, coaches, and/or operating expenses of the current UK sideline cheerleading squad and the dance team would enable UK to count these programs as varsity sports and participants as varsity athletes.

5. Whether it is likely that UK's promise to add varsity stunt or junior varsity soccer to its athletic program would enable it to meet the effective accommodation of interests and abilities standard and result in Prong One proportionality in 2021-22.

(*See* DE 92-1 at 3).

### A. Whether UK is accommodating female interests generally under Title IX

UK argues that, in opining on whether UK is complying with certain prongs of Title IX's participation options, Lopiano offers impermissible legal conclusions. The Court is persuaded by this argument.

3

There is a "subtle," but "nonetheless important" distinction between "opin[ing] on the ultimate question of liability" (impermissible), and "stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue" (permissible). *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). Courts generally exclude expert testimony for stating a "legal conclusion" only when the witness explicitly testifies, in "specialized" legal terminology, that a defendant violated (or did not violate) the law. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019).

Here, it would be impossible for Lopiano to opine about UK's current compliance without crossing the line into impermissibility. The Plaintiffs argue that, even though Lopiano uses legal terminology in her report, she is not actually providing legal opinions. The plaintiffs assert that Lopiano's testimony is not offered to disprove UK's actual compliance with Title IX, but rather to establish industry standards for compliance.

In her report and testimony, however, Lopiano "compares what UK has done on all elements—compares it to what Title IX requires" and states that her report is "all about the University of Kentucky's fact situation compared to the Title IX standards." (DE 119 at 59-60). Moreover, Lopiano has not and does not plan to talk about other universities' compliance. (*Id.* at 60). This constitutes nothing more than applying the facts to the law, which crosses the line of impermissibly opining on the question of liability. Lopiano cannot interpret what Title IX means, nor can she seek to interpret the law as applied to UK's practices.

In *Portz v. St. Cloud State University*, the United States District Court for the District of Minnesota was confronted with a nearly identical task as this Court—deciding whether to exclude the testimony of Dr. Lopiano in a Title IX class action case. *See* 297 F. Supp. 3d 929, 951 (D. Minn. 2018). Though that Court allowed limited testimony on grounds irrelevant to the present

4

case, that court granted the defendants' motion to exclude to the extent that it involved Lopiano's testimony about the requirements of Title IX or whether [the University] was in compliance with those requirements.

### B. Lopiano's testimony regarding which students count under Title IX

Next, UK takes issue with Lopiano's proposed testimony regarding which students should count for "athletic participation" under Title IX. UK's objection is actually two-fold. First, it argues that Lopiano's opinions regarding UK's EADA survey are unreliable. Second, UK argues that Lopiano's' opinions on whether UK's Cheer and Dance teams actually provide athletic participation opportunities under Title IX are unreliable. As discussed above, any testimony relating to these topics that either (1) attempts to interpret Title IX or (2) amounts to legal conclusions about UK's compliance is impermissible. But even testimony that skirts these boundaries fails to meet *Daubert* standards because Lopiano cannot offer a reliable basis for her opinions.

As for Lopiano's opinions on participation derived from the EADA survey analysis, Lopiano performed only a cursory analysis. Lopiano testified that she typically compares a University's EADA submissions with website participant counting data and actual NCAA squad lists. Here, she did not perform this comparison and used only publicly available EADA data to form the basis of some of her conclusions. (*See* DE 119 at 31-33). A broad summation of one of her key opinions is that UK, like many other institutions, overestimates female participation and the resulting gap between that and male participation. But without a sound basis for this opinion *as it relates to UK*, Dr. Lopiano's testimony is unreliable, irrelevant, and unhelpful to the trier of fact.

5

Further, the Court does not require Lopiano's assistance in performing the calculations required to address the "substantial proportionality" issue of Prong I. UK argues, and the Court agrees, that Lopiano's testimony here lacks relevance. At the *Daubert* hearing, when pressed on her proposed opinions regarding UK's participation rates, Lopiano repeatedly veered into the factfinder's lane—essentially offering up her opinion as to what Title XI actually requires and how compliance is judged. (*See id.* at 75-78).

In discussing the relevance of Dr. Lopiano's proposed testimony in the context of a preliminary injunction, the United States District Court for the Eastern District of California found Lopiano's similar analysis of EADA data and participation counts "relie[d] heavily on speculation" and was "sometimes at odds with established Title IX protocols with respect to participation count and roster management." *Anders v. California State Univ., Fresno*, No. 1:21-CV-179-AWI-BAM, 2021 WL 1564448, at *14 (E.D. Cal. Apr. 21, 2021), reconsideration denied, No. 1:21-CV-179-AWI-BAM, 2021 WL 3115135 (E.D. Cal. July 22, 2021). This Court agrees with this analysis.

As to UK's Cheer and Dance team, Dr. Lopiano did not examine the specifics of UK's Cheer or Dance teams in performing her analysis. (DE 119 at 90-95). The Plaintiffs argue that this fact goes to the weight of her testimony, not its admissibility. But whether certain teams should be counted for the purposes of Title IX compliance is a question for the Court, not a witness. Without actually examining the specific programs at issue here, there is simply no way that Dr. Lopiano's testimony would be relevant or helpful to the trier of fact.

Further, Lopiano agreed that she had "no idea" about the "UK dance [or cheer] team members and the work they put in or the benefits they are provided." (DE 92-2 at 62-63). Lopiano

did not consider these teams because she categorically excluded them. Without any fact-specific consideration, Dr. Lopiano's opinions suffer from a lack of reliable methodology.

### C. Lopiano's testimony regarding UK's survey methodology

The Court acknowledges Dr. Lopiano's extensive history and involvement in women's sports and the area of Title IX. But the Court finds that she is not qualified to speak on the adequacy of UK's athletic interest surveys.

Dr. Lopiano testified that, in opining that UK's surveys are inadequate, she relied on her knowledge of surveys to compare Title IX requirements with UK's practices. (DE 119 at 65). Lopiano testified that she is not an expert in survey design and instead relies on another survey design expert in forming her opinions. (*Id.* at 66).

"The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). Lopiano's expertise in other areas of Title IX does not render her an expert on survey methodology—a fact she admitted. Even if, as the plaintiffs argue, Lopiano "is discussing the surveys in the larger context of using surveys at the college level to assess athletic interest and ability," she would still need to be qualified to do so.

### III.

Accordingly, the Court hereby ORDERS that the defendants' motion to exclude the expert testimony of Dr. Donna Lopiano (DE 92) is GRANTED.

July 28, 2023



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY