IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| ELIZABETH NIBLOCK and ALA HASSAN, Individually and on behalf of all those similarly situated, | Case No: 5:19-cv-00394 |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' RESISTANCE TO DEFENDANTS' MOTION FOR RECONSIDERATION** |
| UNIVERSITY OF KENTUCKY, MITCH BARNHART and ELI CAPILOUTO in their official capacities, | |
| Defendants. | |

On July 2, 2024, Defendants (collectively "Kentucky") filed a motion asking this Court to reconsider its August 4, 2023 Order holding that the 1979 Policy Interpretation, specifically the three-part test for analyzing Title IX compliance regarding athletic participation opportunities, should apply to this case. Defendants' motion should be denied.

### **INTRODUCTION**

In 1972, Congress explained the purpose of Title IX was

"to provide for the women of America something that is rightfully theirs-an equal chance to attend the schools of their choice, to develop the skills they want, and to apply those skills with the knowledge that they will have a fair chance to secure the jobs of their choice with equal pay for equal work." 118 Cong. Rec. 5808 (1972) (remarks of Sen.

1

Bayh). *Congress* considered equal opportunity to participate in school athletic programs a vital part of Title IX.

*Haffer v. Temple Univ. of Com. Sys. of Higher Ed.*, 524 F. Supp. 531, 541 (E.D. Pa. 1981), *aff'd and remanded sub nom. Haffer v. Temple Univ.*, 688 F.2d 14 (3d Cir. 1982) (emphasis added). This remains true today and nothing regarding the law surrounding Title IX athletic participation claims has changed since this case was fully submitted to the Court for verdict following the parties August 7-9, 2023 trial.

Kentucky's motion for reconsideration should be denied for two reasons. First, the Sixth Circuit's binding precedent has not changed, nor was it overruled by the recent Supreme Court decision. Second, the Court's analysis in its August 4, 2023 Order comprehensively reviewed the guidance under the *Kisor* factors and nothing about the recent Supreme Court decision called into question *Kisor*, nor the manner by which a Court should review an agencies interpretation of its own *regulations*.

## ARGUMENT

Denying Kentucky's request for reconsideration requires answering one question: has the Sixth Circuit overruled its own controlling precedent regarding the application of the three-part test between the Court's August 4 Order and the present day. The answer to that question is no. The Sixth Circuit decisions of *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608 (6th Cir. 2002) and *Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265 (6th Cir. 1994) are still good law and the

Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) did not overturn these decisions.

In fact, the Supreme Court was very clear on how courts and parties should treat prior decisions,

> [W]e do not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are still subject to statutory stare decisis despite our change in interpretive methodology. Mere reliance on *Chevron* cannot constitute a "special justification" for overruling such a holding, because to say a precedent relied on *Chevron* is, at best, just an argument that the precedent was wrongly decided. That is not enough to justify overruling a statutory precedent.

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (internal quotation marks and citations omitted). Thus, to the extent that Kentucky is attempting to rely on *Loper Bright* to argue that the Sixth Circuit's prior cases affording deference to the Title IX regulations or the Policy Interpretation are no longer binding precedent, this position is counter to the Supreme Court's express pronouncement in *Loper Bright*.

Next, Kentucky's argument that the Supreme Court's recent decision *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), calls into question an agency's interpretation of its own regulations is misplaced. The Court's decision *Loper Bright* is focused on an agency's interpretation of statute, the 1979 Policy Interpretation is an "interpretation of the regulation [34 C.F.R. § 106.41(c)]. *Cohen v. Brown Univ.*, 991 F.2d 888, 896 (1st Cir. 1993); *see also* 44 Fed. Reg. 71,415

("this Policy Interpretation provides a means to assess an institution's compliance with the equal opportunity requirements of the regulation . . .."). "Issues surrounding judicial deference to agency interpretations of their own regulations are distinct from those raised in connection with judicial deference to agency interpretations of statutes enacted by Congress." *Kisor v. Wilkie*, 588 U.S. 558, 591 (2019) (Roberts, C.J., concurring).

Kentucky does not challenge that the regulations—specifically 34 C.F.R. § 106.41(c)—should not apply, but rather than the agency's forty-five year old Policy Interpretation should not apply to this case. (ECF 167, PageID#3870). This is likely because Kentucky knows that challenging the athletic regulations themselves will not be successful.

The athletic regulations were proposed to Congress in 1975 as explicitly contemplated by the 1974 amendments to Title IX. *See* PL 93–380 (HR 69), PL 93–380, Aug. 21, 1974, 88 Stat 484. (requiring the secretary of the U.S. Department of Education—formerly the Department of Health, Education and Welfare—to propose to Congress regulations relating to Title IX including "with respect to intercollegiate athletic activities reasonable provisions considering the nature of particular sports."). The regulations themselves were only effective after "Congress reviewed the regulations exhaustively." *Haffer*, 524 F. Supp. at 536 (describing the extensive review of the proposed regulations, including days of congressional hearings, over

4

9,700 comments, and 664 pages of written statements). The regulations were thoroughly vetted by Congress and the public prior to enactment and the deference courts provide the regulations is not merely reliant on *Chevron*. *See id.*

Given that Kentucky is not challenging the underlying regulations, but rather the Policy Interpretation, the appropriate analysis is whether the regulation interpretation is due *Auer* deference. *Kisor v. Wilkie*, 588 U.S. 558, 563 (2019) ("This Court has often deferred to agencies' reasonable readings of genuinely ambiguous regulations. We call that practice *Auer* deference, . .") (citing *Auer v. Robbins*, 519 U.S. 452 (1997)). The Supreme Court had the opportunity to overturn *Auer* deference and specifically declined to do so. *See Kisor*, 588 U.S. at 563. Moreover, the majority opinion in *Loper Bright* does not mention the *Auer* case, nor does it overturn the *Kisor* decision. *See Loper Bright*, 144 S. Ct. 2244.

Thus, Kentucky's motion to reconsider really boils down to attempting to get another bite at this apple by asking the Court to reconsider its own well-reasoned August 4, 2023 decision analyzing Kentucky's unpersuasive arguments that the Department of Education's interpretation of its own regulations should not apply to the case or be afforded any deference. (Order, ECF 134). Essentially, Kentucky invites the court to commit reversible error by urging it to depart from binding precedent on the purported authority of a Supreme Court decision that expressly directs lower court to *adhere* to such authority. Even if the *Loper Bright* holding

5

could properly be applied to guidance interpreting regulations (which it cannot), under the clear directive in *Loper Bright,* the precedent established by prior courts' decision (including *Miami Univ. Wrestling Club* and *Horner*) remain binding on lower courts unless and until the *issuing* Court elects to reevaluate and overrule that precedent under the Supreme Court's newly articulated standard.

As this Court stated in its earlier order, applicable precedent requires applying the three-part test and "the three-part test remains deserving of deference under the *Kisor* framework." (Order, ECF 134 at PageID#2635).

Because *Loper Bright* does not implicate an agency interpretation of its own regulations and nothing has changed regarding the deference due to the 1979 Policy Interpretation, Defendants' motion for reconsideration should be denied. Further, there is no need for the parties to submit additional briefs on this issue as the Court has already considered the arguments of both parties and the applicable case law in coming to its written order on August 4, 2023.

Respectfully Submitted,

 /s/Lori A. Bullock
Lori Bullock, *Pro Hac Vice*, AT0012240
lbullock@baileyglasser.com
Bailey & Glasser, L.L.P.
309 E 5th Street, Suite 202B
Des Moines, Iowa 50309
Telephone: 515-416-9051

NEWKIRK ZWAGERMAN PLC
Jill Zwagerman, *Pro Hac Vice*, AT0000324
jzwagerman@newkirklaw.com
521 E. Locust Street, Suite 300
Des Moines, IA  50309
Telephone:  515-883-2000
Fax:  515-883-2004

GATLIN VOELKER, PLLC
Barbara Bonar
bbonar@gatlinvoelker.com
50 E Rivercenter Boulevard, Suite 1275
Covington, Kentucky 41011
Office: (859) 781-9100

ATTORNEYS FOR PLAINTIFFS

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that on July 23, 2024, a true copy of this document was delivered electronically using the CM/ECF system to all counsel of record.

<u>*/s/ Lori A. Bullock*</u>
Lori Bullock